PHINEAS D. SCOTT *vs.* WILLIAM PERLEY.

On trial of an action of replevin of oxen bought by the defendant from an administrator of the estate of a person deceased, it appeared that the plaintiff agreed with the administrator to submit to referees " everything in dispute between them; " that " these oxen were in dispute; " that the referees awarded that the plaintiff should pay a certain sum " for the claim of the estate in the oxen; " and that the administrator sold the oxen to the defendant to satisfy this sum, after neglect of the plaintiff to pay it on demand. *Held*, that the judge rightly ruled that " by virtue of the submission to reference and the award of the referees the plaintiff had become the owner of the property, and was entitled to recover," although there was also evidence tending to show that the oxen were property of the deceased at the time of his death.

REPLEVIN of a yoke of oxen. At the trial in the superior court, before *Ames*, C. J., the plaintiff introduced evidence that in May 1865 he hired of his father, James T. Scott, a farm and farming stock, for a term to end April 1, 1866, agreeing " to leave the stock at the end of the term ; " and that he bought of his father a certain yoke o. oxen, which were among the stock, and agreed to pay for them " either in money, one hundred and fifty dollars, or by leaving another yoke of that value at the end of the term," and afterwards traded off this yoke for the yoke

replevied, paying forty-five dollars as "boot-money;" that in February 1866 his father died, and Benjamin H. Smith was appointed administrator of the estate of the deceased, and, as such, laid claim to the new yoke, as belonging thereto, which claim, being disputed by the plaintiff, was referred by him and the administrator, together with various other matters in dispute between them, to three referees for decision, who, on April 12 awarded in writing "that the said Phineas D. Scott shall pay over to Benjamin H. Smith, administrator, as follows, viz: for the claim of the estate in one yoke of oxen, one hundred and fifty dollars," and, for various other things, one hundred and nine dollars; and that afterwards the administrator sold the yoke, at auction, to the defendant, and the plaintiff then replevied them.

For the defendant, the administrator testified that he did not include in his inventory the yoke in question, but afterwards, being incited by some of the heirs of the deceased, made demand of the plaintiff for it and certain other things which they contended belonged to the administrator under the terms of the lease; and that he then proposed a reference; that "everything in dispute was to be referred," and "these oxen were in dispute;" and that accordingly the reference was had, and the award was made as above stated, and the plaintiff paid seventy-five dollars on April 13 on account of the award, the administrator saying to him at the time that he "might pay what was convenient for him, with the understanding that the administrator did not relinquish his claim on the oxen till the award was paid," and the plaintiff replying that "he did not like that, because he could not sell them, but he would pay very shortly;" that nevertheless he neglected to pay the balance, notwithstanding repeated demands therefor, and finally presented against the estate a claim of several hundred dollars, and demanded payment thereof to himself, after deducting the said balance. And the administrator further testified that he refused to allow this claim and afterwards, in August 1866, took the oxen and sold them to pay the amount due on the award, and offered to pay the plaintiff the balance of the proceeds of the sale after deducting the

amount due on the award. The defendant also introduced evidence tending to show that the cattle were in fact the property of the deceased at the time of his death, and offered to prove that the plaintiff " had claimed to hold the oxen only for the forty-five dollars paid as ' boot-money,' and to the extent of that sum," and also that the " boot-money " was paid from funds of the deceased.

But the judge ruled that the plaintiff, " by virtue of the oral submission to reference and the award of the referees, had become the owner of the property, and was entitled to recover," and directed a verdict in his favor; and the defendant alleged exceptions.

*J. C. Perkins,* for the defendant. The award determines that the administrator had an interest in the oxen, but not that the plaintiff had any interest in them before the award. If by " claim," in the language of the award, is intended the claim of the administrator, that was to the entire property in the oxen; and, as the defendant was not allowed to go to the jury, his evidence must be assumed, for the purposes of this hearing, to be conclusive of the fact that the deceased, at the time of his death, had such property. But, 1. the referees were not authorized by the terms of submission to transfer such property; and, 2. a change of property in a chattel is not effected by the mere operation of an award. *Hunter* v. *Rice,* 15 East, 100. *Thorpe* v. *Eyre,* 1 Ad. & El. 926, 932. Billings on Awards, 207. Caldwell on Arbitration, 145. 4 Phil. Ev. 223. It is true that in *Hunter* v. *Rice* the court suggested that if the tenant had accepted the money tendered it would have been an assent on his part to the transfer of the property. But in the present case the plaintiff neglected to pay under circumstances which a jury might have found amounted to a refusal to pay. The full payment of the money by the plaintiff, and the transfer by the administrator of the claim of the estate to the oxen, were to be concurrent acts. A comparison of the effect of an award with the effect of a judgment, even in trover, will not advance the defendant's cause, for the judgment operates by relation only. The fact of conversion made certain by the judgment is that

which transfers the property. *Roch* v. *Hawes*, 12 Pick. 138. *White* v. *Philbrick*, 5 Greenl. 150. And it may be questioned whether the court can, of its own authority, in any case transfer title of property from one man to another, or do more than determine what already exists. If it is contended that the receipt of seventy-five dollars by the administrator was a consent on his part to a transfer of the property of the estate in the oxen, it may be replied, 1. that this is not the ground on which the ruling of the court proceeded; and, 2. that the sum does not cover the amount of the other items of the award, and was received by the administrator with the express reservation, acceded to by the plaintiff, that the claim of the estate on the oxen should remain.

*S. B. Ives, Jr.,* for the plaintiff.

CHAPMAN, J. Mr. Smith, the administrator of James T. Scott, testified, on behalf of the defendant, that everything in dispute was to be referred, and that the oxen, which are the subject of this action, were in dispute. Thus the referees had full authority in the matter. They awarded that the plaintiff should pay to Smith, " for the claim of the estate in one yoke of oxen, one hundred and fifty dollars." This is the whole of their award on that subject. They did not award that Smith should transfer or convey to the plaintiff any interest in them, or release any right in them, or that they should become the property of the plaintiff upon any contingency, or on performance of any condition. But the award treats them as belonging to the plaintiff already, and establishes the amount which he owes the estate on account of them, and awards payment of that sum. The judge therefore ruled correctly that, by virtue of the submission and award, the plaintiff had become the owner of the property, and was entitled to recover. He is entitled to recover, not because the award transferred the property to him, but because it decided, in effect, that they were his property already, and that he owed the estate a certain sum on account of them.

*Exceptions overruled.*