ROBERT D. EVANS & another *vs.* CHARLES M. CLAPP.

Suffolk. March 24, 1876. — Sept. 27, 1877. LORD & SOULE, JJ., absent.

An agreement of dissolution of a partnership existing between A., B. and C. provided that A. should continue the business, paying B. and C. for their respective interests; that matters in dispute should be referred to arbitrators; and for an account of stock. This account was taken and certain goods, supposed to belong to a third party, were not included. In a subsequent dispute between A., B. and C. and this third party, a referee, to whom the matter was submitted, decided that a large portion of the goods in question belonged to the late firm. On a bill in equity brought by B. and C. to compel A. to account and to pay them their respective interests in these goods, the answer of A. alleged that he had paid them according to the account taken at the dissolution and that all matters in dispute had been submitted to the arbitrators as provided, whose report was conclusive. The master, to whom the case was sent, found that the goods in question were not included in the original account, because they were supposed to belong to the third party, and that this matter was not submitted to the arbitrators. *Held,* that the account was not conclusive, and that B. and C. might show that the goods in question were the property of the firm; that the award of the arbitrators was not a bar to the suit; that A. could not prove under his answer that he was ready and willing to refer the claim to the arbitrators named in the articles; and that the award and testimony of the referee, that the ownership of the goods in question was in dispute before him and that he decided that they belonged to the firm, was admissible.

BILL IN EQUITY, filed December 1, 1873, by Robert D. Evans and Levi Ladd against Charles M. Clapp for the settlement of the affairs of a partnership. Hearing upon the pleadings, a

master's report and exceptions thereto, before *Endicott*, J., who reserved the case for the consideration of the full court   The facts appear in the opinion.

*W. A. Field*, for the plaintiffs.

*A. A. Ranney*, for the defendant.

ENDICOTT, J.   The facts and questions presented upon this record are numerous and complicated, and may be more readily understood by reducing them to order and indicating those we consider material and important to the decision.

The parties to this bill were partners dealing in rubber goods, having in their store a stock of goods of their own, and also goods consigned to them for sale by the National Rubber Company. The partnership was dissolved by articles of dissolution on October 1, 1872.   The defendant was to continue the business with its good will, and the articles provided, among other things, that he should take the stock of goods on hand belonging to the firm and allow and pay the plaintiffs therefor in the settlement according to their respective interests.   An inventory of stock on hand on October 1, 1872, was taken, and it was supposed that 14,136 pairs of boots and shoes then in the store were the property of the rubber company, and they were not included in the inventory. The articles also provided that matters in dispute between the partners should be determined by certain arbitrators named therein.   There were several matters in dispute upon which the arbitrators passed, but the master has found that the questions arising in this case were not submitted to or passed upon by them.

The defendant, after October 1, 1872, carried on the business alone, and in the great fire of November 9, 1872, the bulk of his goods, including such of the 14,136 pairs of boots and shoes as then remained unsold, were destroyed.   A controversy then arose between the plaintiffs and the defendant on the one side, as members of the dissolved firm, and the rubber company on the other, in regard to the settlement of their accounts; in which an important question in dispute was, who owned the 14,136 pairs of boots and shoes on October 1, 1872; the rubber company insisting that they belonged to the firm, and the members of the firm, that they were the property of the company.   Being unable to agree, they entered into a submission in writing of all demands

between them to a referee. At the hearing before him the firm presented a detailed statement of their account with a balance of about $41,000 due them. The account consisted of charges for advances made on goods consigned to them by the company, with credits for goods sold or assumed and taken by the firm. The chief matter in dispute was the ownership of the 14,136 pairs of boots and shoes, which the firm did not credit to the company in their account, as the company contended should be done. The referee admitted the claim of the rubber company, to the extent of 9977 pairs, finding that number in fact to belong to the firm, and as a necessary result credited the company with that number in the account. He also found that certain goods charged to the rubber company as "reconsigned" and "recharged" goods should also be credited to the company. His award was in general terms in favor of the firm in the sum of $19,904 without further detail, and was settled by the parties on that basis.

The plaintiffs thereupon bring this bill, which, among other things, in substance alleges that the defendant refuses to account for a large quantity of goods in the store on October 1, 1872, of which he took possession under the articles of dissolution, and which were considered by both parties at that time to belong to the rubber company, but which in fact belonged to the firm, and for which the defendant was bound to account and to pay the plaintiffs for their respective interests therein. The answer admits that the defendant took all the goods belonging to the firm on October 1, 1872, but denies that there were any goods taken by him, then considered to be the property of the rubber company, which in fact belonged to the firm. It then alleges that, at the time of the dissolution, an account of all the goods belonging to the firm was taken by the plaintiffs and assented to by the defendant, and that he has paid them according to the account; and the answer also alleges that all the matters in dispute have been submitted to arbitrators under the articles of dissolution, and their report is conclusive.

It may be convenient in this connection to dispose of some of the questions raised and argued by the defendant.

It is contended that it was not competent for the master to go behind the determination of the parties when they made the

inventory. But the master has found that it was then supposed that the 14,136 pairs of boots and shoes belonged to the rubber company, and for that reason they were not included. The plaintiffs are not debarred, therefore, from showing that they were the property of the firm. It was a case of mutual mistake, and there is nothing in the articles of dissolution which makes an inventory binding or conclusive.

The defendant also contends that the plaintiffs cannot maintain this suit, by reason of the provision for a reference in the articles of dissolution. It is sufficient to say, in reply to this, that no such question is open on the answer. The allegation of the answer is in substance that all matters in dispute were referred to arbitrators. This is an entirely different question, and the master has found that the questions here raised were not submitted to the arbitrators or passed upon by them. Their award, therefore, is not a bar to this demand. *Edwards* v. *Stevens*, 1 Allen, 315. 1 Dan. Ch. Pract. (4th Am. ed.) 670. See *Wood* v. *Humphrey*, 114 Mass. 185. Nor was it competent for the defendant to prove that he was ready and willing to refer this claim to the arbitrators named in the articles. The issue not being raised in the answer, that the agreement to refer precluded the plaintiffs from maintaining this bill, whether the defendant was ready and willing to refer was immaterial.

There were other matters set forth in the bill and answer, which were settled by the parties pending the hearing before the master; and the only question left for the master to decide was the claim against the defendant arising out of the adjustment of the affairs of the firm with the rubber company.

The plaintiffs offered in evidence before the master, on the question who owned the 14,136 pairs of boots and shoes, and as to the goods described as "recharged" and "reconsigned" to the company, the award of the referee, and also his testimony to prove that the ownership of these boots and shoes was in dispute before him, and that he admitted the claim of the rubber company to the extent that 9977 pairs belonged to the firm on October 1, 1872. Independent evidence was also offered by the plaintiffs on these questions. The defendant objected to the evidence of the submission to and award of the referee in the controversy with the rubber company, and to his testimony re-

specting the 14,136 pairs of boots and shoes on hand on October 1, 1872. The master makes two findings upon this part of the case: one based upon the award and the testimony of the referee; and the second upon the other evidence before him. Assuming the award and the evidence of the referee to be competent and conclusive, he finds that 9977 pairs, and the reconsigned and recharged goods, belonged to the firm; and, if not competent, then upon other evidence he finds that a portion of the 14,136 pairs belonged to the firm, but that " it is not possible to ascertain at this time the exact quantity," and he is unable to do so; but as the best approximation to accuracy under the circumstances he finds that this quantity would amount to 3,600 pairs, and that the " recharged and reconsigned goods " belonged to the firm, and he also finds the value to be $1.58 per pair. It is to be observed that, laying aside the award, the master has found on other evidence as to the recharged goods and as to the value per pair of the goods on hand on October 1, 1872, belonging to the firm. The only question, therefore, is whether the award and the testimony of the referee, that the ownership of the goods was in dispute before him and that he admitted the claim of the rubber company to the extent that 9977 pairs belonged to the firm, was competent, and the testimony of the referee as to other matters becomes immaterial.

The first question that arises is, would the award and the testimony of the referee have been competent in a subsequent suit between these parties and the rubber company, in which the title to these goods was in dispute.

The award of a referee, after a full hearing, and acquiesced in by the parties, is binding and conclusive upon all matters submitted to him. It often becomes necessary, in determining what questions are concluded by the award, or whether the award is in itself binding upon the parties, to show by parol evidence what took place before the referee, what was in controversy before him, and what matters entered into his decision. The referee is a competent witness himself to establish these facts. *Martin* v. *Thornton*, 4 Esp. 180. *Strong* v. *Strong*, 9 Cush. 560, 576, and cases cited. *Blakely* v. *Graham*, 111 Mass. 8. *Scott* v. *Perley*, 98 Mass. 511. *Wood* v. *Willis*, 110 Mass. 454. *In re Dare Valley Railway*, L. R. 6 Eq. 429, 435. But parol evidence

is not admissible to vary or control a written ˙ award, and there are numerous decisions showing in what cases such evidence is incompetent, and in which a referee is precluded from testifying. *Wiswall* v. *Hall*, Quincy, 27. *Withington* v. *Warren*, 10 Met. 431, 433. *Clark* v. *Burt*, 4 Cush. 396, 399. *Leavitt* v. *Comer*, 5 Cush. 129. *Ward* v. *Gould*, 5 Pick. 291. See 2 Greenl. Ev. § 78.

In a recent case in England, heard before the Court of Exchequer, the Exchequer Chamber and the House of Lords, this question is very fully and elaborately considered. *Buccleuch* v. *Metropolitan Board of Works*, L. R. 3 Ex. 306; L. R. 5 Ex. 221; L. R. 5 H. L. 418, 457, 462. The case arose upon a claim made by the plaintiff for damages to his property by reason of an embankment constructed by public authority along the River Thames, and was referred to an arbitrator, who was called as a witness by the defendants for the purpose of showing that he exceeded his authority. All the judges gave opinions in the course of the proceedings. The Lord Chancellor, in giving the final judgment in the House of Lords, remarked : " The umpire being a competent witness, the only question is, to what extent the defendants were entitled to examine him as to the particulars of his award. They had an undoubted right to know from him whether in his estimate of the compensation he took into consideration any matters not included in the reference, and therefore not within his jurisdiction. To prevent the defendants from questioning him so far would have been to deprive them of information to which they were entitled, by shutting them off from the only source of it, in the breast of the umpire. He alone could tell what subjects he included under the general terms of his award. But this having been ascertained, the defendants were not at liberty to go farther, and to ask the umpire what were the elements which entered into his consideration in determining the quantum of compensation. Within the limits of the reference, the amount to be awarded was entirely within the discretion and judgment of the umpire." And, in concurring with the Lord Chancellor in the result, Lord Cairns said : " It appears to me that, upon every point which may be considered to be a matter of fact with reference to the making of the award, the evidence of the arbitrator or umpire was properly admissible.

He was properly asked what had been the course which the argument before him had taken — what claims were made and what claims were admitted; so that we might be put in possession of the history of the litigation before the umpire up to the time when he proceeded to make his award. But there it appears to me the right of asking questions of the umpire ceased. The award is a document which must speak for itself, and the evidence of the umpire is not admissible to explain or to aid, much less to attempt to contradict (if any such attempt should be made) what is to be found on the face of the written instrument."

Two cases have come under our notice which bear directly on the question presented in this case. In *Zeigler* v. *Zeigler*, 2 S. & R. 286, the plaintiff brought an action to recover compensation for repairing a saw-mill on the premises of the defendant. The defendant pleaded an award of arbitrators, and a judgment thereon in a former suit between the same parties. At the trial, the defendant offered the record of the former suit, which was an action of covenant founded on an agreement by the plaintiff to sell the defendant a tract of land on which the saw-mill was erected. It was referred to arbitrators, who awarded in general terms that the plaintiff should give to the defendant a deed of the premises. The record and the award were admitted in evidence, and the arbitrators were allowed to testify that the dispute relative to the claim for repairing the saw-mill had been decided by them, the plaintiff having brought it forward and demanded compensation. The plaintiff had acquiesced in the award, and the court held that he was bound by it, and that when a party brings forward a claim, and, in the usual course of proceedings, such claim is not entered on the record, it becomes necessary to prove it by parol evidence, which was the best that the nature of the case admitted, and that the law of evidence adapts itself to the nature of the case. In *Buck* v. *Spofford*, 35 Maine, 526, the award directed the conveyance of certain land, and the referees were allowed to testify that, before them, the plaintiff claimed a right to three sixteenths of a township, and that they decided that he was entitled to but three twentieths.

Suppose, in the case at bar, after the rendition of the award and the settlement of the parties according to its terms, the rubber company had brought trover, or, if the boots and shoes

had been in existence, replevin for them against the firm or this defendant, in whose possession they were. The face of the award discloses no decision on the question of title, which had been already decided. It would clearly have been competent for the referee to testify, on the production of the award, that the question of title to these boots and shoes was in dispute before him, that he had decided that the boots and shoes or a portion of them belonged to the firm, that his decision on that question entered into his award, and that he allowed the value of a certain portion of them as a credit to the account of the company. In other words, the referee may testify to the proceedings before him, and that the question sought to be tried in the new suit was settled and determined by arbitration.

Nor can there be any doubt that the result of the award is also binding on the plaintiffs and defendant. It not only concluded the rights of the firm, as against the rubber company, but as between themselves and in view of the contract of dissolution. The award did not change the title to the property; it merely ascertained it. *Thorpe* v. *Eyre*, 1 A. & E. 926.

If an award is made against a firm, and it is paid by one partner, upon the question of contribution by the others, the amount of the award is conclusive. They cannot dispute that the amount paid was not really due from the firm. The question before the referee was, to whom the boots and shoes belonged; if to the company, his award would have been larger; as he found they belonged to the firm, the award was smaller by deducting their value. As, by the articles of dissolution, these boots and shoes, found to belong to the firm, passed to the defendant, to be paid for by him, he cannot be permitted to try the question of title again, when, by a failure of evidence, the parties may not be able to establish the fact. If he can succeed in throwing out the finding of the referee, upon which the rights of the firm against the rubber company, and the title in these particular boots and shoes, was established, he may get them without paying for them. And, while the plaintiffs have suffered in the award by having to credit these shoes to the account of the firm against the company, they may suffer in this case, unless they can show by the award that they did in fact belong to the company. This would be a most inequitable result, and would prevent the plain-

tiffs from arriving at a just settlement of their respective interests under the articles of dissolution.

This conclusion renders it unnecessary to consider whether the master should have reported the evidence in regard to the amount of goods on hand on October 1, 1872. And no reason is shown why the claim for reconsigned and recharged goods should not have been allowed.

We therefore decide that the award was competent, and that it was also competent to show that the question whether the firm or the company owned the rubber goods was in controversy before the referee, and that he decided that a certain number of them belonged to the firm. How far the further evidence given by the referee was competent, it is unnecessary to inquire, as the master finds by other evidence the value per pair of the boots and shoes, and as to the recharged and reconsigned goods.

The plaintiffs are entitled to a decree that the defendant shall pay to them, in their respective proportions for the 9977 pairs of boots and shoes, at $1.58 per pair, and for the recharged and reconsigned goods. *Decree accordingly.*