## LUTHER FRENCH v. PHILIP E. NEW.

After a submission, in writing, to arbitrators, of matters in reference to a lease under seal, the arbitrators were informed by the parties that they need not make an award in writing; that they (the parties) merely wanted to know how much the award was, that they might insert the amount in a writing they had drawn up. The arbitrators agreed to award that the defendant should pay the plaintiff $260, and so informed the parties. *Held* that the award was void, for the reason that, not being in writing, it did not discharge the covenants of the lease under seal not yet broken; and hence that it was no bar to an action by the lessor to recover damages for a breach of the covenants in the lease, and the rent reserved therein.

The doctrine of *estoppel* does not apply to such a case. The fact that one of the parties has prevented the arbitrators from making a valid award, will not deprive him of the right to show the invalidity of the one they did make.

A verbal agreement of the parties to a submission that the award shall not be in writing, and that they will abide by a verbal award, has the effect to change the submission from one under seal to a mere verbal one.

A verbal award will not be valid unless a verbal submission of the matters on which the award is made would be binding upon the parties.

THIS action was brought upon a lease of a farm and certain personal property, to recover damages for the breach of covenants in the lease and rent reserved therein for the use of the farm. The lease was under seal. The defense to the action was that the claim for damages and rent had been submitted to arbitrators, who had made an award which destroyed all rights of action on the lease.

The cause was tried at the Saratoga circuit in October, 1854, when the plaintiff was nonsuited. A new trial was denied, at the general term of the Supreme Court in the fourth district, and judgment was there rendered in favor of the defendant. (See the opinion of the Supreme Court, 20 Barb. 481.) The plaintiff appealed from the judgment to this court.

*A. Pond,* for the plaintiff.

*Merrill & Cowen,* for the defendant.

BALCOM, J. The lease was for the term of three years. It expired on the first day of April, 1852. The annual rent was $425, and was payable one half on the 1st day of January, and the other half on the 1st day of April in each year. The defendant did not pay the last two installments of the same. The lease bound the defendant to leave, at the expiration thereof, eight acres of rye growing on the farm, which he did not do ; and the plaintiff proved that by reason thereof he sustained damages to the amount of $25.

According to the arbitration bonds, the parties were to submit the controversy between them to the decision of Messrs. Taylor, Green and Rowley, as arbitrators, (after hearing the testimony of the parties,) "*in reference to a certain lease,*" (which was the lease in question.) The bonds required the arbitrators to make their award in writing, which should be subscribed by them and attested by a subscribing witness, and ready to be delivered &c. on or before the 18th day of April, 1852 ; to the end that all matters in controversy, in that behalf, between the parties, should be finally concluded pursuant to the provisions of the statute for determining controversies by arbitration.

The arbitration was had on the 27th day of March, 1852, which was four days before the lease expired, or the right of action accrued thereon for the last installment of the rent reserved therein, or for the neglect of the defendant to leave eight acres of rye growing on the farm. The plaintiff's claims against the defendant, which he presented to the arbitrators, were for one year's rent of the farm, and for clover seed, timothy seed, wood, oats, stock &c. The defendant also presented claims before the arbitrators ; but the case does not show what they were, except that he claimed he paid too much rent for the farm.

While the arbitrators were deliberating upon the matters submitted to them, the parties agreed as to the manner in which the defendant should pay whatever award should be made against him ; and with the view of carrying such agreement into effect, they executed bonds to each other, providing for the payment of such award, whatever it might be, in a certain way and by installments; but it does not appear that those bonds were ever delivered.   They recited that the parties had entered into a bond to submit their matters in controversy to Emerson, Green and Taylor as arbitrators, when the truth was they had submitted the same to Rowley, Green and Taylor to determine as arbitrators.

The arbitrators (Rowley, Green and Taylor) were informed by the parties that they need not make an award in writing; that they (the parties ) had a writing drawn up, and merely wanted to know how much the award was, and "that they could fix the award on the instrument as they had agreed." The arbitrators agreed to award that the defendant should pay the plaintiff $260, and so informed the parties, when the plaintiff said he desired to see his lawyer, which he did, and his lawyer immediately served a revocation upon the arbitrators of the submission of the matters to them as arbitrators, and he paid the fees of the arbitrators; and the plaintiff refused to abide by the verbal award, and the arbitrators did not make one in writing.   The defendant offered to prove that he had tendered full performance of the award according to the bonds the parties had signed providing the manner for the payment of an award to be made by Emerson, Green and Taylor; which offer was rejected as immaterial.

The verbal agreement of the parties that the award should not be in writing, and that they would abide by a verbal award, had the effect to change the submission, from one under seal to a mere verbal one ; because the verbal agreement was acted upon, and that under seal was abandoned. The verbal award, therefore, was not valid unless a verbal

submission of the matters, on which the award was made, was binding upon the parties.

The principal thing submitted to the arbitrators was the lease of the farm, which was under seal and contained covenants not broken, to wit, the one to pay the last half year's rent, and the one to leave eight acres of rye growing on the farm on the first day of April, 1852. And it is clear that those covenants could not be discharged by a verbal agreement. (See *Delacroix* v. *Bulkley*, 13 Wend. 71; 3 Kern. 556; 1, Seld. 537.)

Nothing was done towards discharging the covenants, not broken, contained in the lease, that amounted to an executed verbal agreement; for the plaintiff did not even say he would perform the award, after it was stated to the parties. The verbal submission of the matters to the arbitrators was an agreement by the parties to do that which the arbitrators should direct, and when they made their decision, that became a thing to be enforced against the plaintiff, if binding, as *being his agreement*. (See *Walters* v. *Morgan*, 2 Cox's Ch. Cases, 369.)

It requires no argument to prove, that if the parties had verbally agreed with each other, to do precisely what the arbitrators decided they should do, it would not have bound them. Such a verbal agreement would have been a nullity. "A verbal submission is valid in all cases where the subject matter is such that a verbal agreement directly between the parties in the terms of the award, would prevail. But where the law, as for instance, the statute of frauds, requires a contract to be in writing, there both the submission and the award must be in writing." (Caldwell on Arbitration, Vermont ed. 1853, p. 36, n. 1; see *McMullen* v. *Mayo*, 8 Smedes & Marsh. R. 298, and *Walters* v. *Morgan*, *supra*.) The same proposition is stated by Mr. Hill, (2 Hill, 272, n. a,) as follows: "Thus it has been said, that where, from the subject of arbitration, a writing is necessary to pass the right to the thing in demand, or to defeat or destroy the demand,

the submission and award to be available as a bar to that de-
mand, must be in writing." (Also see Russell on Arbitrators,
Law Lib. 4th series, vol. 38, p. 95; *Mayo's Heirs* v. *Chiles*,
3 Monroe, 258.)

The opinion of the Supreme Court concedes the general
rule to be as above stated, but avoids it by misapplying
another laid down in Kyd's Treatise on Awards, and holds,
that although a verbal submission of the unbroken covenants
contained in the lease, by themselves, would not be obliga-
tory, yet being joined with other things of an uncertain
nature, a verbal submission of the whole was binding. The
rule so misapplied is stated by Kyd, when speaking of the
subjects of controversy the law permits to be submitted to
arbitrators, and his language is, that most of the cases,
"which can not be submitted by themselves, may, when
joined with other things of an uncertain nature; because
then there is an uncertainty in the whole of the disputes;
as debt on a bond, whether single or with condition; debt
for arrears of rent ascertained by a lease for years; damages
recovered by verdict and judgment." It is evident he did
not here refer to the mode of submission; for, before leaving
the subject, he remarks as follows: "However, in all cases
where the demand arises on a deed, it would seem the sub-
mission must also be by deed; because a specialty can not
be answered but by a specialty." (Kyd on Awards, 53, 54.)

I have not been able to find the doctrine of the Supreme
Court, on this point, laid down in any adjudged case, or in
any treatise on arbitration or awards; and I am of the
opinion it can not be maintained on principle, and it conflicts
with the well settled rule, already mentioned, "that a cove-
nant under seal, not broken, can not be discharged by a parol
agreement." (See *Suydam* v. *Jones*, 10 Wend. 184.)

I can not see how the doctrine of estoppel is applicable to
the case. The fact that the plaintiff prevented the arbitra-
tors from making a valid award does not deprive him of the
right to show the invalidity of the one they did make. The

legal presumption is that the defendant knew a verbal award would not be binding, but believed, notwithstanding that fact, that the plaintiff would abide by such an one.

If the foregoing views are correct, the award was void; for the reason that it did not discharge the covenant to pay that portion of the rent of the farm not due at the time the same was made, or the one, not then broken, that the defendant should leave eight acres of growing rye upon the farm on the 1st day of April, 1852.

For the foregoing reasons I am of the opinion the judgment of the Supreme Court should be reversed and a new trial granted; costs to abide the event.

SELDEN, ROSEKRANS and EMOTT, JJ. and DENIO, Ch. J. concurred.

MARVIN, J. read an opinion, in which he came to the same conclusion arrived at by Judge BALCOM.

DAVIES, J. delivered an opinion for affirming the judgment, in which WRIGHT, J. concurred.

Judgment reversed, and a new trial granted; costs to abide the event.