THE DAVID HARLEY CO. *vs.* THOMAS P. BARNEFIELD.

PROVIDENCE—NOVEMBER 20, 1900.

PRESENT: Stiness, C. J., Douglas and Blodgett, JJ.

(1)  *Arbitration and Award.*

While an arbitrator may, for the purpose of forming a correct judgment
upon the question submitted, seek information from persons of experi-
ence in the matter, yet it is essential that the award should be founded
solely upon the judgment of the arbitrator, and not be a mere adoption
of the opinion of others.

Under an agreement of arbitration, differences between B., the trustee of
the H. Co., and the H. Co. as to the compensation of B. were referred to
C., the head of a concern engaged in the same line of business as the H.
Co., as arbitrator.  C. made an award, reciting "That being ignorant
of the question . . . I had recourse to an eminent law firm," and
"while hoping the H. Co. will act liberally towards the trustee, I have
to endorse the decision expressed by this law firm:"—

*Held,* that the award was void, not being the result of any judgment of
the arbitrator, but a mere yielding to the judgment of others.

(2)  *Invalid Award.    Collateral Attack.*

On a bill in equity for an accounting based partly upon an award, the re-
spondent may object to the award for illegality apparent upon its face.

BILL IN EQUITY for an account and to determine the com-
pensation of a trustee.    The facts are fully stated in the
opinion.    Heard on bill, answer, and proofs.

DOUGLAS, J.    February 28, 1898, the David Harley Company conveyed all its property, including a large department store then in operation, to the original defendant in this case in trust to convert the same into money and from the proceeds to pay certain debts of the company, and the residue, if any, to distribute among the stockholders. Various powers in furtherance of the objects of the trust were conferred upon the trustee, amongst them being the power to purchase new goods to facilitate the sale of those on hand.

The trust was partially executed, when an arrangement was made between the company and its creditors which resulted in a reconveyance from the defendant to the complainant, September 20, 1898, of the trust estate then remaining. During the continuance of the trust the defendant drew of the money of the complainant various sums, amounting in all to $4,111.10, and retained the same at the termination of his trust, claiming that such amount was a reasonable compensation for his services. The directors of the complainant contested the amount of this claim, and the parties immediately executed the following agreement:

"PAWTUCKET, R. I., Sept. 20th, 1898.

"It is hereby agreed between the directors of the David Harley Company and Thomas P. Barnefield to leave all questions in dispute as to the amount of compensation to said Barnefield as trustee of the said David Harley Co. to Mr. Callender of the firm of Callender, McAuslan & Troup, we all agreeing to be bound by his decision in the matter.

"JOHN H. CUMMING,
"HEZEKIAH CONANT,
"CHARLES B. PAYNE,
"FRANK H. BORDEN,
"THOMAS P. BARNEFIELD."

About October 16, 1898, Mr. Callender sent the parties the following communication:

"Being personally ignorant of the question you wished me to decide, I had recourse to an eminent law firm which is thor-

oughly conversant with the remuneration usually received by trustees and assignees.

"In order to place the matter correctly before the firm, I stated that the trustee claims that he acted as manager also, and I inquired whether he was entitled to additional recompense for acting in that capacity.

"The firm replied, after examining the papers confirming the appointment of trustee, that said trustee could not draw compensation in this case by claiming to act in two capacities, but only from that of trusteeship.

"Under the circumstances, while hoping the directors of the David Harley Co. will act liberally towards the trustee, I have to endorse the decision expressed by this law firm.

"WALTER CALLENDER."

Enclosed with this communication was an opinion reciting the case as presented by Mr. Callender, quoting from the insolvency law of Rhode Island, Gen. Laws, cap. 274, § 61 (but omitting the clause which gives the court authority in special cases to increase the allowance fixed for assignees), and citing also the United States bankruptcy law and advising Mr. Callender that upon the facts submitted fifteen hundred dollars would be a fair and reasonable compensation for the trustee under the deed of trust in question.

The defendant repudiated the decision of the referee, and the complainant, in this bill brought for an accounting, contends that the decision is binding as an award ; and this is the question now before the court.

(1)   We cannot think that the act of the referee in indorsing the conclusion of his lawyers was in any true sense a performance of the duties with which the parties entrusted him.   It is in evidence that he is at the head of a large concern in Providence carrying on the same business that the complainant was engaged in, and was selected to fix the compensation of the defendant because of his acquaintance with the rates paid for such services as were rendered by the defendant. The conclusion he adopts is not the result of any judgment or mental operation of his own, but a mere yielding to the

judgment of others.    The parties were entitled to receive his opinion ; not that of the counsel.

He testifies that they consented to his employing counsel, but they could not have expected that he would substitute them for himself in the decision of the case.    The question was referred to him, as a business man, to say how much the defendant's services were worth to the business which he controlled for six months and twenty days.    If the referee had rightly understood the question submitted to him, he could not have written the first paragraph of his communication ; neither, if his own judgment had arrived at the conclusion reached by counsel, could he have expressed the hope that the directors would act liberally towards the trustee.    He clearly means that he feels restricted by the opinion of counsel to limit the amount of compensation to a certain figure, but that he thinks the trustee deserves to have more.

In *Eads* v. *Williams*, 24 L. J. Ch. 531, an award was pleaded which was shown to have been merely the adoption of the opinion of a third party against the conviction of one of the arbitrators.    Lord Chancellor Cranworth says, p. 534 :

" If therefore the result of this had been that they, having a doubt as to what they ought to say was the value, amongst other means of enabling them to form a correct judgment, took the opinion of Mr. Peacock, a person evidently of skill and competent appearance in these matters, I should not have thought that any objection ; but I do think it an objection, consulting him and then not forming their own judgment upon, amongst other things, his estimate of the value. Instead of doing that, they consult him and then make their award, not because his opinion has determined in their minds what it ought to be, but subscribing to what they think or one of them thinks wrong, because somebody else thinks it right.    That was a course they had no right to take."

Mr. Morse, in commenting on this and other cases, says :

" The theory is sufficiently plainly developed in these English cases that the arbitrator may, for his own information and guidance, ask information from persons whose capacity to form an accurate opinion concerning the subject matter

he relies upon ; that the statements thus obtained by him
are to be treated as evidence or as aids by which he may
make up his own opinion.   He may give them such weight
and credence as he sees fit, even to the point of founding his
judgment upon them ; but it is essential that he *should* form
his judgment, and not adopt and follow them absolutely,
blindly, or in contravention of an actual opinion of his own."
Morse on Arbitration, 169.

(2)    That such a defect apparent upon the face of the supposed
award may be objected to it collaterally is well established.
*Fletcher* v. *Webster*, 5 Allen, 566 ; *Estes* v. *Mansfield*, 6 Allen,
69 ; *Soars* v. *Howe Ins. Co.*, 140 Mass. 343 ; *French* v. *New*,
28 N. Y. 147 ; *Truesdale* v. *Straw*, 58 N. H. 207, at p. 217 ;
*Shively* v. *Knoblock*, 35 N. E. R. 1028.   Indeed, a suit in
equity to set aside an award void upon its face is unnecessary
and will not be entertained.   It is said in *Meloy* v. *Dougherty*,
16 Wis. 287 : ": A court of equity will not interfere to set
aside an award on the ground that it is void, if its invalidity
will appear on the face of the paper when any right is claimed
under it."

Our own court, in *Parker* v. *Pawtucket M. F. Ins. Co.*, 3
R. I. 192, admitted evidence to show that the signature of
one of the arbitrators was made as a witness only, and that
he did not actually join in the award ; and in *Peckham* v.
*School District*, 7 R. I. 545, an action of debt upon an award
heard by the court, they allowed the defendant, under the
general issue, to show evidence on the part of the plaintiff
which prevented the defendant's clerk from going before the
referees and being heard by them, and adjudged the award
to be void on account of the plaintiff's misconduct.   These
cases go much farther than we are required to go to find the
award in the present case of no validity.

The case will be sent to a master to ascertain and report
what amount the original defendant should have retained as
compensation for his services rendered to the plaintiff while
holding its property as trustee, and the balance, if any, due
from the defendant's estate.

*Arnold Green*, for complainant.
*Edwards & Angell*, for respondent.