CAROLINA-VIRGINIA FASHION EXHIBITORS, INC., A CORPORATION
v. WILLIAM L. GUNTER AND ROBERT B. RUSSELL, GENERAL
PARTNERS TRADING AND DOING BUSINESS UNDER THE NAME OF CHAR-
LOTTE DEVELOPMENT ASSOCIATES, A LIMITED PARTNERSHIP

No. 15

(Filed 7 December 1976)

1. **Arbitration and Award § 9— arbitrators' testimony about award —
permissible testimony**

Though the testimony of arbitrators is not competent to impeach
the mental process involved in determining the award, nor is testi-
mony of the arbitrators competent with respect to how well they
followed instructions in ascertaining damages, proof is admissible for
the purpose of showing that all matters included in the submission
were considered and adjudicated by the arbitrators, and of showing
what entered into their decision; moreover, testimony of a dissenting
arbitrator is admitted to show misconduct on the part of the other
arbitrators, and testimony is admitted where it is not objected to and
where the responding party cross-examines the arbitrator.

2. **Arbitration and Award § 9— reasonable belief misconduct occurred —
arbitrators' depositions admissible in proceeding to vacate award**

Where an objective basis exists for a reasonable belief that mis-
conduct on the part of arbitrators has occurred, the parties to the
arbitration may depose the arbitrators relative to that misconduct,
and such depositions are admissible in a proceeding under G.S.
1-567.13 to vacate an arbitration award.

3. **Arbitration and Award § 9— misconduct by arbitrators — proceeding
to vacate award — admissibility of arbitrators' depositions**

An objective basis existed for a reasonable belief that misconduct
by arbitrators occurred in an arbitration proceeding to determine the
proportion of taxes, utilities and insurance premiums owed by a lessee
under the terms of a lease where the terms of the lease agreement
called for a mathematical calculation and the award was unsupported
by the evidence of either party; therefore, it was proper for defend-
ants to depose the arbitrators relative to misconduct which apparently
led to such result, and such depositions were admissible in a proceed-
ing to vacate the award.

4. **Arbitration and Award § 9— arbitrators gathering evidence outside
hearings — no notice to parties — misconduct sufficient to vacate award**

Action of arbitrators in gathering evidence outside the scheduled
hearings and without notice to the parties was a violation of the
N. C. Uniform Arbitration Act and hence of the parties' arbitration
agreement which constituted misconduct sufficient to vacate the award
of the arbitrators.

DEFENDANTS appeal from judgment of *Snepp, J.,* 14 July
1975 Session, MECKLENBURG Superior Court. The appeal was

duly docketed in the Court of Appeals and defendant petitioned this Court for discretionary review prior to determination of the cause by the Court of Appeals. We allowed the petition, and the case is now before us for initial appellate review.

On 28 September 1970 plaintiff (CVFE) and defendants (CDA) entered into an Agreement to Lease under the terms of which plaintiff agreed to lease approximately 175,000 square feet of permanent showroom space on two adjacent floors of a building to be constructed by defendants in Charlotte. The building was constructed and upon its completion plaintiff took possession of its designated space on 1 January 1972. Said building is known as the Carolina Trade Mart at 531 South College Street, Charlotte, North Carolina.

A dispute arose between the parties as to the proper construction of certain portions of the lease agreement and plaintiff commenced this action for a declaratory judgment. After extensive discovery proceedings the parties settled a portion of the dispute and, on 2 August 1974, entered into a stipulation by which the remaining issues in dispute were submitted to arbitration. Pursuant to the stipulation, each party selected an arbitrator and the two arbitrators selected a third arbitrator. The plaintiff selected W. Cleve Davis, defendants selected Edward L. Vinson, Sr., and those two arbitrators selected Willis I. Henderson.

At the hearings conducted by the arbitrators each side relied on the provisions of the lease agreement which provided in paragraph four, in part:

"In addition to said rental, CVFE agrees to pay to CDA or to its designate that proportion of (all ad valorem taxes on the land above described and any improvements thereon, all charges for public utility services thereto, and) all premiums for fire and extended coverage, public liability insurance and such multi-peril coverage as CDA deems necessary in connection with the use of said land and the improvements thereon, which the total square feet of gross heated area occupied by its bears to the total square feet of gross heated area in all of the improvements constructed on said land."

In addition, CDA relied upon a portion of paragraph seven of the lease agreement reading:

"The building will consist of a parking area at ground level and three floors above, the second and third floors being reserved for the exclusive use of CVFE."

There was evidence tending to show that CVFE (plaintiff) had divided the cost of insurance, utilities, ad valorem taxes and maintenance on the basis of one third to CDA (defendants) which occupied the first floor above the parking area and two thirds to CVFE which occupied the second and third floors above the parking area. CVFE made payments for insurance, utilities, ad valorem taxes and maintenance expense on this basis, although there were numerous disputes about which items of maintenance expenses should be shared and which items of insurance cost of the first year should be shared. Finally, in November 1973, plaintiff contended that its share was less than two thirds with respect to ad valorem taxes, that it was not bound by its previous statements, and that because of extra utility consumption on the floor it did not occupy, as well as other matters, it was not required to pay two thirds of the taxes, utilities and insurance cost. Plaintiff contended that, under the lease agreement, the amount owed by it for taxes and utilities ranged from 47 to 60 percent of the total charge for those items. Defendants steadfastly maintained that 66⅔ percent was plaintiff's correct portion.

Four questions were submitted to and answered by the arbitrators. The fourth question, and the answer thereto, reads as follows: What proportion of taxes, utilities and insurance premiums should be borne by the parties? Answer: CVFE 61 percent, CDA 39 percent. Defendants contend that the activities of the arbitrators in relation to this question amount to misconduct prejudicial to defendants' rights and require the award to be vacated.

After various hearings at which the parties submitted both documentary and testimonial evidence, together with written statements of their contentions, the arbitrators on 20 November 1974 notified the parties by mail of their decision by signing and mailing to counsel for each party a copy of the questions submitted with the questions answered and signed by each of the arbitrators. Thereafter, defendants gave timely notice of their intention to take the depositions of the three arbitrators,

and such depositions were taken over the objection of the plaintiff.

Those depositions revealed that the arbitrators made an inspection of the building on several occasions and, as a result of the visits, concluded that certain portions of the two floors reserved for the "exclusive use" of plaintiff were in fact open to the public. Consequently, they deducted 14,200 square feet from the total square feet of the two floors occupied by plaintiff to determine what portion of the building was occupied by plaintiff and what portion of the taxes, utilities and insurance cost plaintiff should pay. Mr. Vinson testified: "The 14,200 square feet that we excluded, we excluded on the basis of that being open to the public. . . . In that respect, we made an inspection of the building on several occasions. . . . During the hearings, I went through it by myself after each of the meetings. . . . I personally carefully inspected the so-called showroom space which is off of each side of the lobby, to determine in my mind if those corridors were in anyway open to the public. . . . I also inspected the bathrooms for the same purpose, to determine in my mind if they were not wholly occupied and controlled by Carolina-Virginia. . . . Willis was with me at least once, if not twice. . . . We concluded that the provision in the lease that those two floors were for the exclusive use of CVFE was not correct."

Willis I. Henderson, one of the arbitrators, deposed that he made an investigation "of the physical situation there at the building on my own. I walked over all the different floors and looked it over to my full satisfaction. . . . I considered the lobby was not occupied by the tenant. . . . As a result of my examination of the building on my own, I concluded that the areas embraced by the lobby, and the ramp, and the open areas on each of the CVFE floors was open to the public, on all floors. . . . I did not observe the signs in . . . the two CVFE lobbies of the two CVFE floors warning against unauthorized presence." The evidence of the third arbitrator, Mr. Davis, was to the same effect.

In light of the depositions defendants filed motion and application under G.S. 1-567.13 and .14, to vacate or correct the award of the arbitrators. Plaintiff moved to suppress the depositions of the arbitrators and filed application for confirmation of the award.

At a hearing before Judge Snepp upon the motions, defendants contended there was misconduct on the part of one of the arbitrators in consulting an outside attorney before the arbitrators made their award and further misconduct by the arbitrators in going upon and viewing the premises without the consent of any of the parties and, partially at least, basing the award upon information thus obtained.

Among other things, Judge Snepp found as a fact: (1) That one of the arbitrators did seek the advice of an outside attorney during the course of the proceedings but further found there was no *admissible* evidence that the decision of the arbitrators would have been different had the advice of the attorney not been received, (2) that the award was properly made and entered in accordance with the arbitration stipulation and applicable statutes, and (3) that "[b]ut for the conclusion of law No. 6 set forth below the court would find as a fact that the action of [arbitrator] Vinson in consulting with outside counsel and the action of the arbitrators in going on the premises and forming an opinion from what they observed, which was unsupported by evidence at the open hearing, constituted misconduct." Judge Snepp's conclusion of law No. 6 was as follows: "The depositions of the arbitrators are not competent to show the basis by which the arbitrators arrived at their decision or to show misconduct on the part of the arbitrators."

Based upon the foregoing crucial findings of fact and conclusion of law, plaintiff's motion to suppress the depositions of the arbitrators was allowed, defendants' motion and application to vacate the finding was denied, and plaintiff's application for confirmation of the arbitration award was allowed and said award was confirmed "and shall stand as a Judgment." Defendants appealed.

*Harry C. Hewson of the firm of Jones, Hewson & Woolard, attorney for defendant appellants.*

*Bradley, Guthery & Turner by Paul B. Guthery, Jr., attorneys for plaintiff appellee.*

HUSKINS, Justice.

Judge Snepp, in his judgment, found no misconduct on the part of the arbitrators, *supported by competent evidence,* which justified setting aside the award. He did find, however, that

but for his conclusion of law that the depositions of the arbitrators were not admissible to impeach their award, he would have found such misconduct. The threshold question presented to this Court, therefore, is whether the trial judge correctly concluded that the "depositions of the arbitrators are not competent to show the basis by which the arbitrators arrived at their decision or to show misconduct on the part of the arbitrators."

The plaintiff argues that the cases and encyclopedias of law support the ruling of the trial judge. At 5 Am. Jur. 2d *Arbitration and Award* § 187, we find the statement that it is "the general rule that an arbitrator may not by affidavit or testimony impeach his own award or show fraud or misconduct on the part of the arbitrators." Similarly, it is stated in 6 C.J.S. *Arbitration* § 177, that "an arbitrator is not a competent witness to prove his own fraud or misconduct. . . ." Many cases give lip service to this rule. *See e.g., Sapp v. Barenfeld*, 34 Cal. 2d 515, 212 P. 2d 233 (1949) ; *Giannopulos v. Pappas*, 80 Utah 442, 15 P. 2d 353 (1932). "It has been held with great unanimity that the admissions of an arbitrator made after the filing of an award are inadmissible in proceedings to set aside the letter." *Bisnovitch v. British American Assur. Co.*, 100 Conn. 240, 123 A. 339 (1924).

Examination of the many cases cited in support of this proposition, however, demonstrates that the decisions are neither unanimous nor clear as to what may and what may not be impeached. To clarify the present state of the law it is necessary to examine the decisions and exceptions in some detail.

[1] It is clear that the testimony of the arbitrators is not competent to impeach the *mental process* involved in determining the award. For example, in *Grudem Brothers Co. v. Great Western Piping Corp.*, 297 Minn. 313, 213 N.W. 2d 920 (1973), the appellants contended that the arbitrators meant to allow offsets for damages but that, through inaccurate wording, this intent was not apparent on the face of the award. An attempt to introduce testimony of an arbitrator to show intent was rejected, the court stating that "[t]o allow such testimony would vary the terms of the agreement and work to impeach it. The award should be interpreted from the language used therein rather than the testimony of one of the arbitrators as to what they meant to do by the award." *But see Black v. Woodruff,*

193 Ala. 327, 69 So. 97 (1915) ; *Oregon-Washington R. & Nav. Co. v. Spokane, P. & S. Ry. Co.,* 83 Or. 528, 163 P. 989 (1917).

Similarly, a court will not admit testimony of the arbitrators as to how well they followed instructions in ascertaining damages, *Gramling v. Food Machinery and Chemical Corp.,* 151 F. Supp. 853 (W.D.S.C. 1957).

In *Matter of Weiner Co.,* 2 App. Div. 2d 341, 155 N.Y.S. 2d 802 (1956), it was summed up in this way: "An arbitrator should not be called upon to give a reason for his decision. Inquisition of an arbitrator for the purpose of determining the processes by which he arrives at an award, finds no sanction in law. *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 203, 76 S.Ct. 273; *Shirley Silk Co. v. American Silk Mills,* 257 App. Div. 375, 377, 13 N.Y.S. 2d 309, 311."

On the other hand, it is widely accepted that proof is admissible "for the purpose of showing that all matters included in the submission were considered and adjudicated by the arbitrators, and of showing what entered into their decision. . . ." *Jensen v. Deep Creek Farm & Live Stock Co.,* 27 Utah 66, 74 P. 427 (1903). *See also Sapp v. Barenfeld, supra; Twin Lakes Reservoir & Canal Co. v. Platt Rogers,* 112 Colo. 155, 147 P. 2d 828 (1944) ; *Stowe v. Mutual Home Builders' Corp.,* 252 Mich. 492, 233 N.W. 391 (1930) ; *Grudem Brothers Co. v. Great Western Piping Corp., supra; Giannopulos v. Pappas, supra.* This principle has been firmly implanted in the law of North Carolina. The Court early stated that "[p]arol evidence is not only admissible, but necessary in order to show what matters the arbitrators acted on." *Brown v. Brown,* 49 N.C. 123 (1856). *See Cheatham v. Rowland,* 105 N.C. 218, 10 S.E. 986 (1890) ; *Osborne v. Calvert,* 83 N.C. 365 (1880) ; *Walker v. Walker,* 60 N.C. 255 (1864). The reason for this rule has been stated thusly: "[I]t often becomes necessary, in determining what questions are concluded by the award, or whether the award is in itself binding upon the parties, to show by parol evidence what took place before the referee, what was in controversy before him and what matters entered into his decision. The referee is a competent witness himself to establish these facts." *Evans v. Clapp,* 123 Mass. 165, 25 Am. Rep. 52 (1877).

There are other acknowledged exceptions to the "general rule" as stated. Testimony of a dissenting arbitrator is admitted to show misconduct on the part of the other arbitrators. *Grif-*

*fith Co. v. San Diego College for Women,* 45 Cal. 2d 501, 289 P. 2d 476 (1955); *Cont. Bk. Supply Co. v. Int. Brotherhood of Bookbinders,* 239 Mo. App. 1247, 201 S.W. 2d 531 (1947). Testimony is admitted where it is not objected to and where the responding party cross-examines the arbitrator. *William H. Low Estate Co. v. Lederer Realty Corp.,* 35 R.I. 352, 86 A. 881 (1913).

Here, appellants do not seek to introduce the testimony of the arbitrators under any of the exceptions which we have noted thus far—nor would they have any grounds to do so. The depositions were taken over strenuous objection by the plaintiffs. It is conceded that the award was duly signed and assented to by all the arbitrators.

Rather, appellants contend that the action of the arbitrators in entering the building in the absence of the parties and in basing their decision in part on information gathered at that time constitutes misconduct. They further contend that this Court should hold, contra to the oft-stated "general rule," that such misconduct may be proved by the depositions and testimony of the arbitrators themselves. For the reasons which follow, we agree.

First, we note that many cases which cite the "general rule" relative to the incompetency of testimony of an arbitrator to impeach his own award or show fraud or misconduct on the part of an arbitrator *do not support that statement with respect to misconduct.* In *Griffith Co. v. San Diego College for Women, supra,* the "general rule" is cited but testimony of an arbitrator was admitted under the dissenting arbitrator exception discussed above. *Sapp v. Barenfeld, supra,* again citing the "general rule," allowed the testimony as it tended to show what matters were considered. The court in *Lauria v. Soriano,* 180 Cal. App. 2d 163, 4 Cal. Rptr. 328 (1960), found it to be "settled law that an arbitrator cannot impeach the award by testifying to his fraud or misconduct," yet in the next sentence found that no such testimony had been offered. In *Bisnovitch v. British American Assur. Co., supra,* the plaintiffs attempted to introduce the testimony of a witness as to a conversation he had with the referee. The testimony was excluded. The court said the plaintiff should have allowed the *arbitrator* to testify first and then used the statement of the witness to impeach him if necessary. Later, however, the court cited the general rule

that admissions of an arbitrator are inadmissible *to impeach an award.* In *Giannapolus v. Pappas, supra,* the court cited the "general rule" that the testimony of an arbitrator is inadmissible to prove misconduct, yet found "misbehavior" on the part of one of the arbitrators based in part on the affidavits of the other arbitrators.

Plaintiff relies strongly on *Fukaya Trading Company, S. A. v. Eastern Marine Corp.,* 322 F. Supp. 278 (E.D. La. 1971), a federal district court decision. Examination of this case reveals that its support is not as strong as plaintiff would contend. The court did refuse to allow depositions to be taken of the arbitrators, yet it implied that *were there any objective evidence on which to base the allegations of misconduct,* the depositions would have been allowed. The requirement of an objective basis of misconduct was derived from *Continental Materials Corp. v. Gaddis Mining Co.,* 306 F. 2d 952 (10th Cir. 1962), and reflects the court's concern that "fishing expeditions" might be encouraged without the objective evidence requirement.

Although cases may be found in which the rule is arguably applied and an arbitrator's testimony of misconduct is excluded, *see e.g., Ellison v. Weathers,* 78 Mo. 115 (1883), it is apparent from an examination of the cases discussed that the law is not so settled nor the rule so general as the plaintiff asserts. Rather, it appears that the "general rule" is subject to many exceptions, depending upon the particular fact situation presented.

It is therefore instructive to examine those cases where, as here, an ex parte investigation by the arbitrator is alleged. None of the cases examined speak directly to the issue of impeachment by the testimony of the arbitrator. Several, however, base the finding of misconduct on the affidavit of the arbitrator.

In *Berizzi Co. v. Krausz,* 239 N.Y. 315, 146 N.E. 436 (1925), the arbitrator was held to have been engaged in misconduct where he made an investigation by himself of the quality of a product. Speaking for the court, Judge Cardozo noted that "one gains the impression, when one reads his [the arbitrator's] affidavit, that what he did by himself and without notice was the real basis for his decision."

In *Moshier v. Shear,* 102 Ill. 169, 40 Am. Rep. 573 (1881), the arbitrator was allowed to testify that he had an ex parte

discussion with a former arbitrator. This testimony formed the basis for the court's decision that misconduct had occurred.

In early English cases the court received testimony from arbitrators as to their alleged misconduct. *Stalworth v. Inns,* 13 Mee & W. 466 (1844) ; *Walker v. Frobisher,* 6 Ves. Jr. 70 (1801). *Cf. Modern System Bakery v. Salisbury,* 215 Ky. 230, 284 S.W. 994 (1926) ; *E. Arthur Tutein, Inc. v. Hudson Valley C & P Corp.,* 230 App. Div. 419, 245 N.Y.S. 125 (1930) ; *Young v. Insurance Co.,* 207 N.C. 188, 176 S.E. 271 (1934) ; *Hill v. Insurance Co.,* 200 N.C. 502, 157 S.E. 599 (1931) ; *David Harley Co. v. Barnefield,* 22 R.I. 267, 47 A. 544 (1900).

It is clear from the cases discussed that no consensus has emerged on the issue presented in the present case. Rather, different resolutions have been adopted by different courts. We do not feel compelled, through considerations of *stare decisis* or uniformity in the law, to adopt any particular position. We therefore look to considerations of policy and the practical administration of justice.

We have found no uniform rule from the texts and treatises on arbitration. Sturges, in Commercial Arbitrations and Awards § 365 (1930), notes that "ordinarily an arbitrator may not testify to his own acts of mistake or misconduct any more than he may to those of the arbitral board generally, to establish a cause sufficient to defeat or vacate an award. . . ." The policy considerations grounding this position are clear. One court has said that to permit impeachment would be to restrict "private, frank, and free" discussion of the issues involved. Further, such practices could lead to "tampering" with the arbitrators thereby allowing a corrupt arbitrator to destroy an award to which he had given his assent under oath. *Gramling v. Food Machinery and Chemical Corp., supra.* It is also true that a strong policy supports upholding arbitration awards. A foundation of the arbitration process is that by mutual consent the parties have entered into an abbreviated adjudicative procedure, and to allow "fishing expeditions" to search for ways to invalidate the award would tend to negate this policy. *Gramling v. Food Machinery and Chemical Corp., supra; Fukaya Trading Company, S.A. v. Eastern Marine Corp., supra; Big-W Construction Corp. v. Horowitz,* 24 Misc. 2d 145, 192 N.Y.S. 2d 721 (1959). Arbitration proceedings would then become a superfluous step in "the course of litigation, causing delay and

expense, but settling nothing finally." *Patriotic Order, Sons of America v. Hartford F. Ins. Co.*, 305 Pa. 107, 157 A. 259 (1931).

On the other hand, John Morse, in his work entitled *The Law of Arbitration and Award*, ch. 21 (1872), cites *Russell on Arbitration* (3d ed.) for the proposition that "a narration of mere facts concerning the proceedings in the reference, stands on a very different footing from an explanation of the mode in which the arbitrator has performed his judicial functions, and . . . there seems no reason why an arbitrator should not depose to them as well as anybody else. Accordingly we find on motions for setting aside awards, or in showing cause against such motions, affidavits of arbitrators are constantly used in the courts of law and equity to explain alleged irregularities, to answer charges of misconduct, to show under what circumstances particular meetings were held, and in what manner the award was executed." More recently it has been said "[t]hat an arbitrator's *misconduct* is material to invalidate the award cannot be doubted. . . . The sound doctrine admits him to testify." 8 Wigmore, Evidence § 2358 (McNaughton rev. 1961).

We find the Wigmore statement very persuasive. The use of an arbitrator's sworn testimony to prove misconduct or fraud on the part of the arbitrators does not unduly disturb public policy restricting impeachment of arbitrator's awards. We therefore hold that such evidence is competent for that restricted purpose.

We do not, by this ruling, authorize inquisition into the mental processes of the arbitrators. We share the view expressed by other courts that such inquiry into the reasoning behind an award would relegate arbitration to a superfluous role in the judicial process. Nor do we open the door to "tampering" with arbitration awards. Unlike error which arises in the mind of the arbitrator and must rise or fall solely on his statements, we are here concerned with misconduct which can likely be corroborated or denied, either by other members of the arbitration panel or by extrinsic evidence. Furthermore, this decision will not lead to "fishing expeditions" by the loser, thus destroying the abbreviated format of the arbitration panels. An arbitrator's deposition of misconduct may be allowed in evidence *only when some objective basis exists for a reasonable belief that misconduct has occurred. Compare Continental Materials*

*Corp. v. Gaddis Mining Co., supra, with Fukaya Trading Company, S.A. v. Eastern Marine Corp., supra.*

In contrast to the weak policy considerations advanced against proof of misconduct by evidence of the arbitrators, we find strong reasons for admission of such testimony. The Legislature has defined certain acts which, if proven, are grounds for vacation of an arbitration award. G.S. 1-567.13. To refuse to admit testimony of the arbitrators where there is an objective basis reasonably to believe that misconduct has occurred, would deprive the aggrieved party of its most effective means of ascertaining and proving the alleged misconduct. This may well thwart the legislative intent expressed in G.S. 1-567.13. Finally, we note that admission of the testimony will, in many instances, aid in averting substantial injustice, which is surely the first duty of any court.

[2, 3] Accordingly, we hold that where an objective basis exists for a reasonable belief that misconduct has occurred, the parties to the arbitration may depose the arbitrators relative to that misconduct; and that such depositions are admissible in a proceeding under G.S. 1-567.13 to vacate an award. Here, the objective basis is provided by the obvious inconsistency of the award with the evidence presented at the hearing. Plaintiff's evidence and contentions fixed the percentage owed by it for taxes, utilities and insurance at 47 to 60 percent, while defendants' contentions and proof set it at 66⅔ percent. Yet the arbitrators established plaintiff's portion at 61 percent, a figure unsupported by the evidence of either party. The terms of the lease agreement call for a mathematical calculation—not a result reached by compromise. Thus it was proper for defendants to depose the arbitrators relative to misconduct which apparently led to such result.

In a special finding of fact Judge Snepp found that but for his conclusion of law that the depositions of the arbitrators were inadmissible, the "action of the arbitrators in going on the premises and forming an opinion from what they observed, which was unsupported by evidence at the open hearing, constituted misconduct." We have determined that the depositions are admissible. The question at this point, therefore, is whether this special finding of fact is correct.

We note at the outset that the "finding of fact" is in reality a mixed finding of fact and law. Such findings are re-

viewable on appeal. *Brown v. Board of Education*, 269 N.C. 667, 153 S.E. 2d 335 (1967). Initially the judge determined that the arbitrators privately visited and viewed the premises, formed an opinion based on this visit, and that this opinion was not supported by evidence received at the open hearing. This constitutes a finding of fact and is conclusive on this Court if supported by any competent evidence. *See* 1 Strong's N. C. Index 3d, Appeal and Error § 57.2, and cases cited therein. We find ample evidence in the depositions of the arbitrators to support the findings.

Based on these findings Judge Snepp decided that the stated acts constitute misconduct. This is a conclusion of law and, although denominated as a finding of fact, is reviewable on appeal. *Casualty Co. v. Funderburg*, 264 N.C. 131, 140 S.E. 2d 750 (1965); *Warner v. W & O, Inc.*, 263 N.C. 37, 138 S.E. 2d 782 (1964).

Jurisdictions which have considered the question of ex parte investigations by arbitrators have consistently held that such acts amount to misconduct. This is true whether the acts of the arbitrator were taken in the absence of one party, *Jackson v. Roane*, 90 Ga. 669, 16 S.E. 650 (1893); *Fred J. Brotherton, Inc. v. Kreielsheimer*, 8 N.J. 66, 83 A. 2d 707 (1951); *E. Millius & Co. v. Regal Shirt Corp.*, 113 N.Y.S. 2d 385 (1952); *Seaboard Surety Co. v. Commonwealth*, 350 Pa. 87, 38 A. 2d 58 (1944); *Walker v. Frobisher, supra,* or in the absence of both. *Jessup & Moore Paper Co. v. A. S. Reed & Bro. Co.*, 10 Del. Ch. 146, 87 A. 1011 (1913); *Moshier v. Shear, supra; Berizzi Co. v. Krausz, supra; Saffir v. Wilson*, 100 N.Y.S. 2d 263 (1950); *290 Park Avenue v. Fergus Motors*, 275 App. Div. 565, 90 N.Y.S. 2d 613 (1949). *See* Annotation, 27 A.L.R. 2d 1160. As one court succinctly stated, "[t]he obligation of arbitrators . . . is to act fairly and impartially and to determine the cause upon the evidence adduced before them at the hearing. They have no right to consider facts excepting as submitted in the evidence at the hearings and it is misconduct for them to seek outside evidence by independent investigation. An arbitrator acts in a quasi-judicial capacity and must render a faithful, honest and disinterested opinion upon the testimony submitted to him." *Fred J. Brotherton, Inc. v. Kreielsheimer, supra.*

An examination of the Uniform Arbitration Act indicates that our Legislature has adopted this view. G.S. 1-567.6(1)

provides that the arbitrators shall "appoint a time and place for the hearing and cause notification to the parties to be served. . . . " Judge Cardozo, in interpreting similar language, has stated that "[t]here would be little profit in fixing a time and place of hearing, if the arbitrators were at liberty when the hearing was over to gather evidence ex parte, and rest their award upon it." *Berizzi Co. v. Krausz, supra.*

[4]　An even clearer indication of legislative intent is found in G.S. 1-567.6(2) to the effect that, unless otherwise provided by the agreement, "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." No stronger language could have been used to insure that arbitration decisions are based solely on evidence presented at the required hearings. The parties to this action agreed to abide by the North Carolina Uniform Arbitration Act. Actions of the arbitrators in gathering evidence outside the scheduled hearings and without notice to the parties is a violation of the Act and hence of the arbitration agreement. The "violation of the agreement, however innocently conceived, constitutes misconduct. . . . " *Fred J. Brotherton, Inc. v. Kreielsheimer, supra.*

We hold, on these principles, that the ex parte acts of the arbitrators constitute misconduct. A final matter to be resolved is whether this misconduct is sufficient cause to vacate the award. We hold that it is.

Vacation of an award is controlled by G.S. 1-567.13. One of the grounds upon which the court *shall* vacate an award is where "[t]he arbitrators . . . so conducted the hearing, contrary to the provisions of G.S. 1-567.6, as to prejudice substantially the rights of a party. . . . " G.S. 1-567.13(a)(4).

Arbitrator Vinson stated that he personally visited the premises in order to determine in his own mind whether the areas were open to the public. It is apparent from his testimony and that of the other arbitrators that the decision to exclude the lobby, stairwell and elevators from the part "occupied" by plaintiff was based on the unauthorized ex parte visits. It is also apparent from the depositions that the arbitrators did not consider certain factors which the defendants could have pointed out if present during the visits. For example, the arbitrators did not notice signs in the elevators warning people against unauthorized presence on the second and third floors; they were

not cognizant of the fact that display windows and display cases in the lobbies of those floors were rented out by plaintiff; and they did not consider whether plaintiff occupied space on the first floor. Under these circumstances we hold that defendants were substantially prejudiced by the misconduct of the arbitrators in violation of G.S. 1-567.6, and that under G.S. 1-567.13 the award must be vacated.

Our decision here is inapplicable to jurors and jury verdicts. It is settled law that jurors will not be heard to impeach their verdict after it has been rendered and received by the court and the jury has been discharged. *In re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1 (1960). Attempts to depose jurors relative to their verdict, or relative to alleged misconduct in arriving at it, have been consistently rejected by this Court. *Selph v. Selph,* 267 N.C. 635, 148 S.E. 2d 574 (1966). "Beginning with *Sutrell v. Dry,* 5 N.C. 94 (1805), and in an unbroken line of decisions to the same effect since, it is firmly established in this State, as a general rule at least, based upon wise reasons of public policy that jurors, after their verdict has been rendered to and received by the court and after they have been discharged and separated, will not be allowed by testimony or affidavit to impeach, to attack, or to overthrow their verdicts, nor will evidence from them be received for such purpose, and that evidence for that purpose, if admitted at all, must come from some other source." *State v. Hollingsworth,* 263 N.C. 158, 139 S.E. 2d 235 (1964), and cases therein cited. We adhere to that view. Sound policy considerations distinguish jury verdicts from arbitration awards.

We find it unnecessary to decide whether consultation by one of the arbitrators with Attorney Robert Hovis, a disinterested outsider to the litigation, constitutes prejudicial misconduct. See Annotation in 47 A.L.R. 2d 1362 where decisions both ways are discussed. It suffices to say that consultation by an arbitrator with an outsider is apt to raise more questions than it answers. The practice should be avoided.

For the reasons stated the award of the arbitrators, and the judgment confirming it, are vacated. The case is remanded to the Superior Court of Mecklenburg County for further proceedings not inconsistent with this opinion.

Vacated and remanded.