STROUD, Judge.
*757 Thomas A. Stokes, III ("Plaintiff") appeals from an order denying Plaintiff's motions seeking post-award discovery in an action resolved by voluntary arbitration under the Family Law Arbitration Act. We dismiss Plaintiff's appeal because Plaintiff has not demonstrated that this interlocutory order deprives him of a substantial right which will be jeopardized without review prior to a final determination on the merits of his motion to vacate the arbitration award and set aside *539 the trial court's order confirming the arbitration award. *758 I. Background
Plaintiff and Catherine C. Crumpton ("Defendant") were married in June 1989 and separated in April 2011. Plaintiff filed an action in July 2011 seeking equitable distribution of the parties' marital assets and child support. Plaintiff and Defendant entered into a written agreement on 13 July 2011 to resolve the action through arbitration under North Carolina's Family Law Arbitration Act ("the arbitration agreement"). The trial court entered a Consent Order to Arbitrate Equitable Distribution and Child Support on 18 August 2011.
The arbitration agreement outlined the scope of pre-arbitration discovery. Plaintiff, through counsel, deposed Defendant as part of this pre-arbitration discovery. During Defendant's deposition, Defendant testified she was the C.E.O. and majority shareholder of Drug Safety Alliance, Inc. ("DSA"), a company that managed adverse event reporting for pharmaceutical, biotech, animal health, and over-the-counter dietary supplement companies. Defendant testified she had "no intention of selling" DSA at that time, although many people had contacted her who were interested in purchasing DSA. Defendant also testified she had commissioned an appraisal of DSA, which valued the company at less than $3,500,000.00. There appears to be no dispute that Defendant's interest in DSA was a marital asset.
Plaintiff and Defendant entered into an Equitable Distribution Arbitration Award by Consent on 18 May 2012 ("the equitable distribution agreement"). The equitable distribution agreement provided, in part, that Defendant would pay Plaintiff $1,000,000.00 in a lump sum and then $650,000.00 over six years with interest. Moreover, in the event that Defendant sold her ownership interest in DSA, the entire balance owed to Plaintiff would become due. The trial court entered an Order and Judgment Confirming Equitable Distribution Arbitration Award by Consent on 18 May 2012.
Plaintiff filed a Verified Motion to Vacate Arbitration Award and Set Aside Order and Motion to Engage in Discovery on 26 November 2012. In the motion, Plaintiff alleged that "Defendant signed a Letter of Intent on [5 July] 2012 to sell [all] of the shares of DSA" to another company and that DSA was sold in August 2012 for $28,000,000.00. Plaintiff also alleged that Defendant was planning on selling DSA for this large sum during arbitration and that she fraudulently induced Plaintiff to accept a distribution of only $1,650,000.00 based on her prior representations about the company. Plaintiff and Defendant then filed a number of competing motions to compel discovery and motions for protective orders *759 from discovery, respectively. In an order entered on 7 August 2014 ("the order"), the trial court concluded:
1. There is no pending action between Plaintiff and Defendant in which discovery may be propounded.[1]
2. Plaintiff's Verified Motion to Vacate Arbitration Award is not a claim within which discovery may be conducted. Plaintiff's [request for] written discovery is therefore inappropriate.
3. All of Plaintiff's Motions to Compel [Discovery] ... should be denied.
Plaintiff appeals.
II. Interlocutory Appeal
Plaintiff appeals from the order of the trial court denying his motions seeking post-award discovery. The order does not rule on Plaintiff's motion to vacate the arbitration award. Accordingly, Plaintiff concedes that the order is interlocutory. See Bullard v. Tall House Bldg. Co., 196 N.C.App. 627, 637, 676 S.E.2d 96, 103 (2009) ("An interlocutory order is one made during the pendency of an *540 action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") (citation omitted). Interlocutory orders are generally not immediately appealable. Id. 676 S.E.2d at 103.
Nonetheless, in two instances a party is permitted to appeal interlocutory orders. First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment [pursuant to N.C. Gen.Stat. § 1A-1, Rule 54(b) (2013) ] that there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent *760 a review prior to a final determination on the merits [pursuant to N.C. Gen.Stat. § 7A-27(b)(3)(a) (2015) and N.C. Gen.Stat. § 1-277(a) (2015) ]. Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.
Id., 676 S.E.2d at 103 (citation omitted). The trial court did not certify this order as immediately appealable under Rule 54(b). On appeal, Plaintiff argues only that this Court should review his appeal because the order of the trial court "affect[ed] a substantial right."
As a preliminary matter, for actions litigated under the Family Law Arbitration Act ("FLAA"), N.C. Gen.Stat. § 50-60(a) (2015) provides that
An appeal may be based on failure to comply with the procedural aspects of this Article. An appeal may be taken from any of the following:
(1) An order denying an application to compel arbitration made under G.S. 50-43 ;
(2) An order granting an application to stay arbitration made under G.S. 50-43(b) ;
(3) An order confirming or denying confirmation of an award;
(4) An order modifying or correcting an award;
(5) An order vacating an award without directing a rehearing; or
(6) A judgment entered pursuant to provisions of this Article.
Cf. Bullard, 196 N.C.App. at 638, 676 S.E.2d at 103 (noting similar limitations under N.C. Gen.Stat. § 1-569.28(a) (2005), which defines the appeals that may be taken in actions litigated under the Revised Uniform Arbitration Act ("RUAA")). Plaintiff does not identify any way in which the order on appeal raises any issue of a "failure to comply with the procedural aspects of" Chapter 50, Article 3, nor is it one of the rulings specifically listed under N.C. Gen.Stat. § 50-60(a). See N.C. Gen.Stat. § 50-60(a).
It would seem logically inconsistent that an order, which itself is non-appealable under the substantive statute that governs appeals of *761 such orders could be made appealable under another statute merely because it is interlocutory. The dissent cites Bullard for the proposition that "even when a specific order is not listed as one of the types of appeals permitted under the FLAA, an appeal of an interlocutory order may still be permitted if an appellant can demonstrate that absent immediate review, he would be deprived of a substantial right." See Bullard, 196 N.C.App. at 637, 676 S.E.2d at 103. But in Bullard, this Court held that "the list enumerated in N.C. Gen.Stat. § 1-569.28(a) includes the only possible routes for appeal under the Revised Uniform Arbitration Act":
Therefore, we conclude that the list enumerated in N.C. Gen.Stat. § 1-569.28(a) includes the only possible routes for appeal under the Revised Uniform Arbitration Act. Furthermore, the statute reads that "an appeal may be taken...." See N.C. Gen.Stat. § 1-569.28(a) (emphasis added). "Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory." In re Hardy, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) (citations omitted). Thus, the orders and judgment enumerated in N.C. Gen.Stat. § 1-569.28(a) are the only situations where an appeal could possibly be taken under the RUAA, though one is not required.
*541 [See New Hanover Child Support Enforcement v. Rains, 193 N.C.App. 208, 212, 666 S.E.2d 800, 803 (2008) ]; In re Hardy at 97, 240 S.E.2d at 372.
Id. at 635, 676 S.E.2d at 102 (emphasis added, citation and brackets omitted, and ellipsis in original).
The statutory language of the FLAA and the RUAA are substantively very similar and we interpret both the same way. See N.C. Gen.Stat. §§ 1-569.28(a), 50-60(a) (2015). In Bullard, we engaged in a substantial right analysis only after we had determined that the appellant had appealed "from an order which has both currently appealable and non-appealable issues" under the RUAA. Id. at 637, 676 S.E.2d at 103 (emphasis added). The other two cases on which the dissent relies also do not support the dissent's position. See The Bluffs v. Wysocki, 68 N.C.App. 284, 285-86, 314 S.E.2d 291, 292-93 (1984) ; Laws v. Horizon Housing, Inc., 137 N.C.App. 770, 771, 529 S.E.2d 695, 696-97 (2000).
We also disagree with the dissent's statement that N.C. Gen.Stat. § 50-60(a)(6) is a "catch-all" provision. Subsection (6) refers to "[a] judgment entered pursuant to provisions of this Article." N.C. Gen.Stat. § 50-60(a)(6). The dissent emphasizes that the RUAA refers to *762 "[a]final judgment entered pursuant to this Article." See N.C. Gen.Stat. § 1-569.28(a)(6) (emphasis added). The dissent argues that the absence of the word "final" in N.C. Gen.Stat. § 50-60(a)(6) indicates that a party can appeal any order so long as it affects a substantial right. But this slight difference in language is immaterial in this case. The order on appeal is neither a "judgment" nor final. Although the terms "order" and "judgment" are sometimes used interchangeably, the term "judgment" normally refers to a court's final ruling. See Bullard, 196 N.C.App. at 637, 676 S.E.2d at 103 ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") (emphasis added).
In addition, the language, "[a] judgment entered pursuant to provisions of this Article [,]" suggests that we construe the term "judgment" in pari materia and identify other uses of the term "judgment" in the FLAA. See N.C. Gen.Stat. § 50-60(a)(6) (emphasis added). Only two other provisions in the FLAA use the term "judgment": N.C. Gen.Stat. § 50-57 (2015), which is entitled "Orders or judgments on award" and N.C. Gen.Stat. § 50-59 (2015). N.C. Gen.Stat. § 50-57 provides in pertinent part: "Upon granting an order confirming, modifying, or correcting an award, an order or judgment shall be entered in conformity with the order and docketed and enforced as any other order or judgment." N.C. Gen.Stat. § 50-57(a). N.C. Gen.Stat. § 50-59 provides in pertinent part that "[m]aking an agreement ... confers jurisdiction on the court to enforce the agreement under this Article and to enter judgment on an award under the agreement." N.C. Gen.Stat. § 50-59(a). In both instances, "judgment" refers to a court's final ruling after confirmation, modification, or correction of the arbitration award. Accordingly, a "judgment entered pursuant to provisions of this Article" is a final judgment, similar to the RUAA's provision in N.C. Gen.Stat. § 1-569.28(a)(6). See N.C. Gen.Stat. § 50-60(a). The interlocutory order on appeal here is not a judgment.
Despite the clear language of the FLAA, Plaintiff seeks to rely upon N.C. Gen.Stat. § 7A-27(b)(3)(a) which provides that an "appeal lies of right directly to the Court of Appeals.... [f]rom any interlocutory order or judgment of a superior court or district court in a civil action or proceeding that .... [a]ffects a substantial right." (Emphasis added.) Plaintiff argues that "an appellant may appeal either under N.C. Gen.Stat. § 50-60, if the type of order is specifically listed, or under *763 N.C. Gen.Stat. § 7A-27(b)(3)(a), if the order affects a substantial right." Even assuming, without deciding, that Plaintiff may seek to have the order reviewed under N.C. Gen.Stat. § 7A-27(b)(3)(a), Plaintiff has failed to demonstrate that he would be deprived of a substantial *542 right without appellate review of the order before a final judgment has been entered.
Generally, the interlocutory denial of a motion to compel discovery "affect[s] a substantial right and is appealable" only when
the desired discovery would not have delayed trial or have caused the opposing party any unreasonable annoyance, embarrassment, oppression or undue burden or expense, and if the information desired is highly material to a determination of the critical question to be resolved in the case[.]
Dworsky v. Insurance Co., 49 N.C.App. 446, 447-48, 271 S.E.2d 522, 523 (1980). In addition, "orders regarding discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." Id. at 448, 271 S.E.2d at 523.
Plaintiff contends that his "discovery requests [sought] 'highly material' information to help Plaintiff establish ... that the arbitration award was procured by a multi-million dollar fraud[,]" and that the order denying him post-award discovery "foreclose[d] Plaintiff's ability to meaningfully prosecute" his motion to vacate the arbitration award. (Portion of original in caps.) In support of this contention, Plaintiff directs this Court to Fashion Exhibitors and William C. Vick Construction Co., both of which stand for the proposition that "parties to [an] arbitration may depose the arbitrators relative to [their alleged] misconduct[] and that such depositions are admissible in a proceeding [arising from a motion] to vacate an award [,]" but only when "an objective basis exists for a reasonable belief" that the arbitrators engaged in misconduct during arbitration. See Fashion Exhibitors v. Gunter, 291 N.C. 208, 219, 230 S.E.2d 380, 388 (1976) (emphasis added); William C. Vick Construction Co. v. N.C. Farm Bureau Federation, 123 N.C.App. 97, 102, 472 S.E.2d 346, 349, disc. review denied, 344 N.C. 739, 478 S.E.2d 14 (1996). Without addressing whether the holdings in Fashion Exhibitors and William C. Vick Construction Co. might extend to allow post-award discovery in cases where one of the parties to the arbitration allegedly engaged in misconduct, we believe these cases are distinguishable from this case.
Specifically, the parties who lost at arbitration in Fashion Exhibitors and William C. Vick Construction Co. identified specific, "objective"
*764 evidence of misconduct prior to seeking post-award discovery as part of a motion to vacate an arbitration award. Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388 ; William C. Vick Construction Co., 123 N.C.App. at 99, 472 S.E.2d at 347. In Fashion Exhibitors, the parties were engaged in a commercial property lease dispute. Fashion Exhibitors, 291 N.C. at 209, 230 S.E.2d at 382. After the litigants were notified of the arbitrators' final decision, the losing parties noticed there was an "obvious [mathematical] inconsistency [between] the award [and] the evidence presented at the hearing. " Id. at 219, 230 S.E.2d at 388 (emphasis added). They deposed the arbitrators and confirmed that the inconsistency occurred because the arbitrators had conducted their own investigation into the matter before them. See id., 230 S.E.2d at 388. In William C. Vick Construction Co., the losing party learned, after an arbitration award had been entered, that the arbitrator "had been indicted for racketeering, mail fraud, bank fraud, and impeding the function of a United States government agency" and also that the arbitrator had "undisclosed relationships" with counsel for the other party in the arbitration. William C. Vick Construction Co., 123 N.C.App. at 99, 472 S.E.2d at 347. A subsequent deposition of the arbitrator confirmed that the arbitrator had "significant business relationships and friendships" with counsel for the other party. Id. at 101-02, 472 S.E.2d at 348-49.
Here, Plaintiff and Defendant entered into the equitable distribution agreement in May 2012, in which Plaintiff agreed, in part, to a cash distribution of approximately $1,650,000.00. Prior to entering into this agreement, Defendant had DSA appraised for less than $3,500,000.00 and represented that she did not have specific plans to sell DSA. Less than two months after the award was entered, Defendant allegedly signed a letter of intent to sell DSA, and DSA was then sold for $28,000,000.00 a month after that. Although Plaintiff finds this sequence *543 of events suspicious, he has not directed this Court to any specific, "objective" evidence of misconduct by Defendant that would necessitate post-award discovery. See id. at 102, 472 S.E.2d at 349 ; Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388. In essence, Plaintiff believes that he "smells smoke," and he wants the courts to help him see if there is a fire. This is exactly the kind of "fishing expedition" expressly prohibited by Fashion Exhibitors. See Fashion Exhibitors, 291 N.C. at 216, 230 S.E.2d at 386 ("The requirement of an objective basis of misconduct ... reflects the court's concern that 'fishing expeditions' might be encouraged without the objective evidence requirement.") (citation omitted).
Moreover, even if Plaintiff were properly positioned to engage in post-award discovery, Plaintiff has not articulated in his brief how he *765 would be prejudiced by waiting until after the trial court entered a final judgment to appeal the trial court's conclusion of law that his motion to vacate the arbitration award was "not a claim within which discovery may be conducted." See Bullard, 196 N.C.App. at 637, 676 S.E.2d at 103 ("[An] order deprives the appellant of a substantial right [when that right] would be jeopardized absent a review prior to a final determination on the merits.") (citation omitted). Accordingly, Plaintiff's interlocutory appeal is dismissed.
Although we dismiss the appeal as interlocutory, we stress that this opinion should not be construed as having any effect whatsoever upon the merits of Plaintiff's motion to vacate, which has yet to be decided by the trial court. The dissent appears to address the merits of the underlying motion to vacate by its extensive discussion of the evidence and in expressing concern that "[u]ntil plaintiff is permitted the ability to engage in the limited discovery he requests, plaintiff will not be able to establish the grounds that the award was procured by corruption, fraud, or other undue means to support vacating the award." (Citation and quotation marks omitted.) The trial court's ruling upon the discovery motion was discretionary, and even if another judge may have ruled differently, we find no abuse of discretion. On the substantive issues raised by Plaintiff's motion to vacate, we express no opinion since it is still pending and is not before us on appeal.
DISMISSED.
Judge TYSON concurs.
Judge CALABRIA dissents.

The dissent states that the trial court erred in concluding that "[t]here is no pending action between Plaintiff and Defendant in which discovery may be propounded" because Plaintiff's motion to vacate is pending. It is correct that Plaintiff's motion to vacate was pending, but the trial court concluded, and we agree, that the action -the arbitration of the parties' equitable distribution action-had concluded, and the pending motion was "not a claim within which discovery may be conducted." The parties had already conducted discovery during the arbitration, which was governed by the arbitration agreement and N.C. Gen.Stat. § 50-49 (2011).