IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-1344

 Filed: 5 April 2016

Wake County, No. 11 CVD 11288

THOMAS A. STOKES, III, Plaintiff,

 v.

CATHERINE C. CRUMPTON (formerly Stokes), Defendant.

 Appeal by Plaintiff from order entered on 7 August 2014 by Judge Anna E.

Worley in District Court, Wake County. Heard in the Court of Appeals on 22 April

2015.

 Shanahan Law Group, PLLC, by Kieran J. Shanahan, Christopher S. Battles,
 and Kenzie M. Rakes, for Plaintiff-appellant.

 Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, K. Edward
 Greene, and Robert A. Ponton, Jr., for Defendant-appellee.

 STROUD, Judge.

 Thomas A. Stokes, III (“Plaintiff”) appeals from an order denying Plaintiff’s

motions seeking post-award discovery in an action resolved by voluntary arbitration

under the Family Law Arbitration Act. We dismiss Plaintiff’s appeal because

Plaintiff has not demonstrated that this interlocutory order deprives him of a

substantial right which will be jeopardized without review prior to a final

determination on the merits of his motion to vacate the arbitration award and set

aside the trial court’s order confirming the arbitration award.
 STOKES V. CRUMPTON

 Opinion of the Court

 I. Background

 Plaintiff and Catherine C. Crumpton (“Defendant”) were married in June 1989

and separated in April 2011. Plaintiff filed an action in July 2011 seeking equitable

distribution of the parties’ marital assets and child support. Plaintiff and Defendant

entered into a written agreement on 13 July 2011 to resolve the action through

arbitration under North Carolina’s Family Law Arbitration Act (“the arbitration

agreement”). The trial court entered a Consent Order to Arbitrate Equitable

Distribution and Child Support on 18 August 2011.

 The arbitration agreement outlined the scope of pre-arbitration discovery.

Plaintiff, through counsel, deposed Defendant as part of this pre-arbitration

discovery. During Defendant’s deposition, Defendant testified she was the C.E.O.

and majority shareholder of Drug Safety Alliance, Inc. (“DSA”), a company that

managed adverse event reporting for pharmaceutical, biotech, animal health, and

over-the-counter dietary supplement companies. Defendant testified she had “no

intention of selling” DSA at that time, although many people had contacted her who

were interested in purchasing DSA. Defendant also testified she had commissioned

an appraisal of DSA, which valued the company at less than $3,500,000.00. There

appears to be no dispute that Defendant’s interest in DSA was a marital asset.

 Plaintiff and Defendant entered into an Equitable Distribution Arbitration

Award by Consent on 18 May 2012 (“the equitable distribution agreement”). The

 -2-
 STOKES V. CRUMPTON

 Opinion of the Court

equitable distribution agreement provided, in part, that Defendant would pay

Plaintiff $1,000,000.00 in a lump sum and then $650,000.00 over six years with

interest. Moreover, in the event that Defendant sold her ownership interest in DSA,

the entire balance owed to Plaintiff would become due. The trial court entered an

Order and Judgment Confirming Equitable Distribution Arbitration Award by

Consent on 18 May 2012.

 Plaintiff filed a Verified Motion to Vacate Arbitration Award and Set Aside

Order and Motion to Engage in Discovery on 26 November 2012. In the motion,

Plaintiff alleged that “Defendant signed a Letter of Intent on [5 July] 2012 to sell [all]

of the shares of DSA” to another company and that DSA was sold in August 2012 for

$28,000,000.00. Plaintiff also alleged that Defendant was planning on selling DSA

for this large sum during arbitration and that she fraudulently induced Plaintiff to

accept a distribution of only $1,650,000.00 based on her prior representations about

the company. Plaintiff and Defendant then filed a number of competing motions to

compel discovery and motions for protective orders from discovery, respectively. In

an order entered on 7 August 2014 (“the order”), the trial court concluded:

 1. There is no pending action between Plaintiff and
 Defendant in which discovery may be propounded.[1]

 1 The dissent states that the trial court erred in concluding that “[t]here is no pending action
between Plaintiff and Defendant in which discovery may be propounded” because Plaintiff’s motion to
vacate is pending. It is correct that Plaintiff’s motion to vacate was pending, but the trial court
concluded, and we agree, that the action—the arbitration of the parties’ equitable distribution action—
had concluded, and the pending motion was “not a claim within which discovery may be conducted.”

 -3-
 STOKES V. CRUMPTON

 Opinion of the Court

 2. Plaintiff’s Verified Motion to Vacate Arbitration
 Award is not a claim within which discovery may be
 conducted. Plaintiff’s [request for] written discovery is
 therefore inappropriate.

 3. All of Plaintiff’s Motions to Compel [Discovery] . . .
 should be denied.

Plaintiff appeals.

 II. Interlocutory Appeal

 Plaintiff appeals from the order of the trial court denying his motions seeking

post-award discovery. The order does not rule on Plaintiff’s motion to vacate the

arbitration award. Accordingly, Plaintiff concedes that the order is interlocutory. See

Bullard v. Tall House Bldg. Co., 196 N.C. App. 627, 637, 676 S.E.2d 96, 103 (2009)

(“An interlocutory order is one made during the pendency of an action, which does

not dispose of the case, but leaves it for further action by the trial court in order to

settle and determine the entire controversy.”) (citation omitted). Interlocutory orders

are generally not immediately appealable. Id., 676 S.E.2d at 103.

 Nonetheless, in two instances a party is permitted to
 appeal interlocutory orders. First, a party is permitted to
 appeal from an interlocutory order when the trial court
 enters a final judgment as to one or more but fewer than
 all of the claims or parties and the trial court certifies in
 the judgment [pursuant to N.C. Gen. Stat. § 1A-1,
 Rule 54(b) (2013)] that there is no just reason to delay the
 appeal. Second, a party is permitted to appeal from an
 interlocutory order when the order deprives the appellant

The parties had already conducted discovery during the arbitration, which was governed by the
arbitration agreement and N.C. Gen. Stat. § 50-49 (2011).

 -4-
 STOKES V. CRUMPTON

 Opinion of the Court

 of a substantial right which would be jeopardized absent a
 review prior to a final determination on the merits
 [pursuant to N.C. Gen. Stat. § 7A-27(b)(3)(a) (2015) and
 N.C. Gen. Stat. § 1-277(a) (2015)]. Under either of these
 two circumstances, it is the appellant’s burden to present
 appropriate grounds for this Court’s acceptance of an
 interlocutory appeal and our Court’s responsibility to
 review those grounds.

Id., 676 S.E.2d at 103 (citation omitted). The trial court did not certify this order as

immediately appealable under Rule 54(b). On appeal, Plaintiff argues only that this

Court should review his appeal because the order of the trial court “affect[ed] a

substantial right.”

 As a preliminary matter, for actions litigated under the Family Law

Arbitration Act (“FLAA”), N.C. Gen. Stat. § 50-60(a) (2015) provides that

 An appeal may be based on failure to comply with
 the procedural aspects of this Article. An appeal may be
 taken from any of the following:

 (1) An order denying an application to compel
 arbitration made under G.S. 50-43;

 (2) An order granting an application to stay
 arbitration made under G.S. 50-43(b);

 (3) An order confirming or denying confirmation
 of an award;

 (4) An order modifying or correcting an award;

 (5) An order vacating an award without directing
 a rehearing; or

 (6) A judgment entered pursuant to provisions of
 this Article.

 -5-
 STOKES V. CRUMPTON

 Opinion of the Court

Cf. Bullard, 196 N.C. App. at 638, 676 S.E.2d at 103 (noting similar limitations under

N.C. Gen. Stat. § 1-569.28(a) (2005), which defines the appeals that may be taken in

actions litigated under the Revised Uniform Arbitration Act (“RUAA”)). Plaintiff does

not identify any way in which the order on appeal raises any issue of a “failure to

comply with the procedural aspects of” Chapter 50, Article 3, nor is it one of the

rulings specifically listed under N.C. Gen. Stat. § 50-60(a). See N.C. Gen. Stat. § 50-

60(a).

 It would seem logically inconsistent that an order, which itself is non-

appealable under the substantive statute that governs appeals of such orders could

be made appealable under another statute merely because it is interlocutory. The

dissent cites Bullard for the proposition that “even when a specific order is not listed

as one of the types of appeals permitted under the FLAA, an appeal of an

interlocutory order may still be permitted if an appellant can demonstrate that

absent immediate review, he would be deprived of a substantial right.” See Bullard,

196 N.C. App. at 637, 676 S.E.2d at 103. But in Bullard, this Court held that “the

list enumerated in N.C. Gen. Stat. § 1-569.28(a) includes the only possible routes for

appeal under the Revised Uniform Arbitration Act”:

 Therefore, we conclude that the list enumerated in N.C.
 Gen. Stat. § 1-569.28(a) includes the only possible routes
 for appeal under the Revised Uniform Arbitration Act.
 Furthermore, the statute reads that “an appeal may be
 taken . . . .” See N.C. Gen. Stat. § 1-569.28(a) (emphasis

 -6-
 STOKES V. CRUMPTON

 Opinion of the Court

 added). “Ordinarily when the word ‘may’ is used in a
 statute, it will be construed as permissive and not
 mandatory.” In re Hardy, 294 N.C. 90, 97, 240 S.E.2d 367,
 372 (1978) (citations omitted). Thus, the orders and
 judgment enumerated in N.C. Gen. Stat. § 1-569.28(a) are
 the only situations where an appeal could possibly be taken
 under the RUAA, though one is not required. [See New
 Hanover Child Support Enforcement v. Rains, 193 N.C.
 App. 208, 212, 666 S.E.2d 800, 803 (2008)]; In re Hardy at
 97, 240 S.E.2d at 372.

Id. at 635, 676 S.E.2d at 102 (emphasis added, citation and brackets omitted, and

ellipsis in original).

 The statutory language of the FLAA and the RUAA are substantively very

similar and we interpret both the same way. See N.C. Gen. Stat. §§ 1-569.28(a), 50-

60(a) (2015). In Bullard, we engaged in a substantial right analysis only after we had

determined that the appellant had appealed “from an order which has both currently

appealable and non-appealable issues” under the RUAA. Id. at 637, 676 S.E.2d at

103 (emphasis added). The other two cases on which the dissent relies also do not

support the dissent’s position. See The Bluffs v. Wysocki, 68 N.C. App. 284, 285-86,

314 S.E.2d 291, 292-93 (1984); Laws v. Horizon Housing Inc., 137 N.C. App. 770, 771,

529 S.E.2d 695, 696-97 (2000).

 We also disagree with the dissent’s statement that N.C. Gen. Stat. § 50-60(a)(6)

is a “catch-all” provision. Subsection (6) refers to “[a] judgment entered pursuant to

provisions of this Article.” N.C. Gen. Stat. § 50-60(a)(6). The dissent emphasizes that

the RUAA refers to “[a] final judgment entered pursuant to this Article.” See N.C.

 -7-
 STOKES V. CRUMPTON

 Opinion of the Court

Gen. Stat. § 1-569.28(a)(6) (emphasis added). The dissent argues that the absence of

the word “final” in N.C. Gen. Stat. § 50-60(a)(6) indicates that a party can appeal any

order so long as it affects a substantial right. But this slight difference in language

is immaterial in this case. The order on appeal is neither a “judgment” nor final.

Although the terms “order” and “judgment” are sometimes used interchangeably, the

term “judgment” normally refers to a court’s final ruling. See Bullard, 196 N.C. App.

at 637, 676 S.E.2d at 103 (“A final judgment is one which disposes of the cause as to

all the parties, leaving nothing to be judicially determined between them in the trial

court. An interlocutory order is one made during the pendency of an action, which

does not dispose of the case, but leaves it for further action by the trial court in order

to settle and determine the entire controversy.”) (emphasis added).

 In addition, the language, “[a] judgment entered pursuant to provisions of this

Article[,]” suggests that we construe the term “judgment” in pari materia and identify

other uses of the term “judgment” in the FLAA. See N.C. Gen. Stat. § 50-60(a)(6)

(emphasis added). Only two other provisions in the FLAA use the term “judgment”:

N.C. Gen. Stat. § 50-57 (2015), which is entitled “Orders or judgments on award” and

N.C. Gen. Stat. § 50-59 (2015). N.C. Gen. Stat. § 50-57 provides in pertinent part:

“Upon granting an order confirming, modifying, or correcting an award, an order or

judgment shall be entered in conformity with the order and docketed and enforced as

any other order or judgment.” N.C. Gen. Stat. § 50-57(a). N.C. Gen. Stat. § 50-59

 -8-
 STOKES V. CRUMPTON

 Opinion of the Court

provides in pertinent part that “[m]aking an agreement . . . confers jurisdiction on

the court to enforce the agreement under this Article and to enter judgment on an

award under the agreement.” N.C. Gen. Stat. § 50-59(a). In both instances,

“judgment” refers to a court’s final ruling after confirmation, modification, or

correction of the arbitration award. Accordingly, a “judgment entered pursuant to

provisions of this Article” is a final judgment, similar to the RUAA’s provision in N.C.

Gen. Stat. § 1-569.28(a)(6). See N.C. Gen. Stat. § 50-60(a). The interlocutory order

on appeal here is not a judgment.

 Despite the clear language of the FLAA, Plaintiff seeks to rely upon N.C. Gen.

Stat. § 7A-27(b)(3)(a) which provides that an “appeal lies of right directly to the Court

of Appeals . . . . [f]rom any interlocutory order or judgment of a superior court or

district court in a civil action or proceeding that . . . . [a]ffects a substantial right.”

(Emphasis added.) Plaintiff argues that “an appellant may appeal either under N.C.

Gen. Stat. § 50-60, if the type of order is specifically listed, or under N.C. Gen. Stat.

§ 7A-27(b)(3)(a), if the order affects a substantial right.” Even assuming, without

deciding, that Plaintiff may seek to have the order reviewed under N.C. Gen. Stat.

§ 7A-27(b)(3)(a), Plaintiff has failed to demonstrate that he would be deprived of a

substantial right without appellate review of the order before a final judgment has

been entered.

 -9-
 STOKES V. CRUMPTON

 Opinion of the Court

 Generally, the interlocutory denial of a motion to compel discovery “affect[s] a

substantial right and is appealable” only when

 the desired discovery would not have delayed trial or have
 caused the opposing party any unreasonable annoyance,
 embarrassment, oppression or undue burden or expense,
 and if the information desired is highly material to a
 determination of the critical question to be resolved in the
 case[.]

Dworsky v. Insurance Co., 49 N.C. App. 446, 447-48, 271 S.E.2d 522, 523 (1980). In

addition, “orders regarding discovery are within the discretion of the trial court and

will not be upset on appeal absent a showing of abuse of discretion.” Id. at 448, 271

S.E.2d at 523.

 Plaintiff contends that his “discovery requests [sought] ‘highly material’

information to help Plaintiff establish . . . that the arbitration award was procured

by a multi-million dollar fraud[,]” and that the order denying him post-award

discovery “foreclose[d] Plaintiff’s ability to meaningfully prosecute” his motion to

vacate the arbitration award. (Portion of original in caps.) In support of this

contention, Plaintiff directs this Court to Fashion Exhibitors and William C. Vick

Construction Co., both of which stand for the proposition that “parties to [an]

arbitration may depose the arbitrators relative to [their alleged] misconduct[] and

that such depositions are admissible in a proceeding [arising from a motion] to vacate

an award[,]” but only when “an objective basis exists for a reasonable belief” that the

arbitrators engaged in misconduct during arbitration. See Fashion Exhibitors v.

 - 10 -
 STOKES V. CRUMPTON

 Opinion of the Court

Gunter, 291 N.C. 208, 219, 230 S.E.2d 380, 388 (1976) (emphasis added); William C.

Vick Construction Co. v. N.C. Farm Bureau Federation, 123 N.C. App. 97, 102, 472

S.E.2d 346, 349, disc. review denied, 344 N.C. 739, 478 S.E.2d 14 (1996). Without

addressing whether the holdings in Fashion Exhibitors and William C. Vick

Construction Co. might extend to allow post-award discovery in cases where one of

the parties to the arbitration allegedly engaged in misconduct, we believe these cases

are distinguishable from this case.

 Specifically, the parties who lost at arbitration in Fashion Exhibitors and

William C. Vick Construction Co. identified specific, “objective” evidence of

misconduct prior to seeking post-award discovery as part of a motion to vacate an

arbitration award. Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388; William

C. Vick Construction Co., 123 N.C. App. at 99, 472 S.E.2d at 347. In Fashion

Exhibitors, the parties were engaged in a commercial property lease dispute. Fashion

Exhibitors, 291 N.C. at 209, 230 S.E.2d at 382. After the litigants were notified of

the arbitrators’ final decision, the losing parties noticed there was an “obvious

[mathematical] inconsistency [between] the award [and] the evidence presented at

the hearing.” Id. at 219, 230 S.E.2d at 388 (emphasis added). They deposed the

arbitrators and confirmed that the inconsistency occurred because the arbitrators

had conducted their own investigation into the matter before them. See id., 230

S.E.2d at 388. In William C. Vick Construction Co., the losing party learned, after an

 - 11 -
 STOKES V. CRUMPTON

 Opinion of the Court

arbitration award had been entered, that the arbitrator “had been indicted for

racketeering, mail fraud, bank fraud, and impeding the function of a United States

government agency” and also that the arbitrator had “undisclosed relationships” with

counsel for the other party in the arbitration. William C. Vick Construction Co., 123

N.C. App. at 99, 472 S.E.2d at 347. A subsequent deposition of the arbitrator

confirmed that the arbitrator had “significant business relationships and friendships”

with counsel for the other party. Id. at 101-02, 472 S.E.2d at 348-49.

 Here, Plaintiff and Defendant entered into the equitable distribution

agreement in May 2012, in which Plaintiff agreed, in part, to a cash distribution of

approximately $1,650,000.00. Prior to entering into this agreement, Defendant had

DSA appraised for less than $3,500,000.00 and represented that she did not have

specific plans to sell DSA. Less than two months after the award was entered,

Defendant allegedly signed a letter of intent to sell DSA, and DSA was then sold for

$28,000,000.00 a month after that. Although Plaintiff finds this sequence of events

suspicious, he has not directed this Court to any specific, “objective” evidence of

misconduct by Defendant that would necessitate post-award discovery. See id. at

102, 472 S.E.2d at 349; Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388. In

essence, Plaintiff believes that he “smells smoke,” and he wants the courts to help

him see if there is a fire. This is exactly the kind of “fishing expedition” expressly

prohibited by Fashion Exhibitors. See Fashion Exhibitors, 291 N.C. at 216, 230

 - 12 -
 STOKES V. CRUMPTON

 Opinion of the Court

S.E.2d at 386 (“The requirement of an objective basis of misconduct . . . reflects the

court’s concern that ‘fishing expeditions’ might be encouraged without the objective

evidence requirement.”) (citation omitted).

 Moreover, even if Plaintiff were properly positioned to engage in post-award

discovery, Plaintiff has not articulated in his brief how he would be prejudiced by

waiting until after the trial court entered a final judgment to appeal the trial court’s

conclusion of law that his motion to vacate the arbitration award was “not a claim

within which discovery may be conducted.” See Bullard, 196 N.C. App. at 637, 676

S.E.2d at 103 (“[An] order deprives the appellant of a substantial right [when that

right] would be jeopardized absent a review prior to a final determination on the

merits.”) (citation omitted). Accordingly, Plaintiff’s interlocutory appeal is dismissed.

 Although we dismiss the appeal as interlocutory, we stress that this opinion

should not be construed as having any effect whatsoever upon the merits of Plaintiff’s

motion to vacate, which has yet to be decided by the trial court. The dissent appears

to address the merits of the underlying motion to vacate by its extensive discussion

of the evidence and in expressing concern that “[u]ntil plaintiff is permitted the

ability to engage in the limited discovery he requests, plaintiff will not be able to

establish the grounds that the award was procured by corruption, fraud, or other

undue means to support vacating the award.” (Citation and quotation marks

omitted.) The trial court’s ruling upon the discovery motion was discretionary, and

 - 13 -
 STOKES V. CRUMPTON

 Opinion of the Court

even if another judge may have ruled differently, we find no abuse of discretion. On

the substantive issues raised by Plaintiff’s motion to vacate, we express no opinion

since it is still pending and is not before us on appeal.

 DISMISSED.

 Judge TYSON concurs.

 Judge CALABRIA dissents.

 - 14 -
 No. COA14-1344 – Stokes v. Crumpton

 CALABRIA, Judge, dissenting.

 Although the majority correctly cites Dworsky v. Travelers Ins. Co., 49 N.C.

App. 446, 271 S.E.2d 522 (1980) regarding the substantial right justifying immediate

appeal of an interlocutory order denying discovery, I do not believe the majority

correctly applies the law to the facts of this case. Plaintiff has demonstrated he would

be deprived of the substantial right contemplated by Dworsky sufficient to justify

immediate review. Alternatively, I would allow plaintiff’s petition for a writ of

certiorari to address his appeal on the merits. Either way, the trial court erred by

concluding there is no pending action within which discovery may be propounded and

abused its discretion by denying plaintiff’s limited discovery requests. The trial

court’s ruling should be reversed and this case should be remanded. For these

reasons, I respectfully dissent.

 I. The Order’s Appealability

 The majority correctly states that pursuant to the Family Law Arbitration Act

(“FLAA”), there is no statutory right to appeal from an order or judgment denying

discovery, see N.C. Gen. Stat. § 50-60(a) (2015), and that a common canon of statutory

construction is that statutes of general application yield to statutes of more specific

application. However, the catch-all language of FLAA’s subsection (a)(6) provides

plaintiff a route to appeal this interlocutory order. See N.C. Gen. Stat. § 50-60(a)(6)

(permitting appeal from “[a] judgment entered pursuant to provisions of this Article”).

Notably absent from that provision is the requirement under the North Carolina
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

Revised Uniform Arbitration Act (“RUAA”) that this be a “final” judgment. See N.C.

Gen. Stat. § 1-569.28(a)(6) (2015). Although the majority acknowledges that “order”

and “judgment” are often used interchangeably, see, e.g., Bullard v. Tall House Bldg.

Co., 196 N.C. App. 627, 636, 676 S.E.2d 96, 102 (2009) (interpreting the RUAA and

concluding that “[a]s the order before us directs further arbitration, it is not a final

judgment”), it asserts that judgments normally refer to a court’s final ruling.

Although this may be true, the majority’s reasoning is conclusory: citing to a case for

authority which quotes the familiar distinction made between a “final judgment” and

an “interlocutory order,” see Veazey v. City of Durham, 231 N.C. 357, 361, 57 S.E.2d

377, 381 (1950) (emphases added), begs the question of whether judgments are

typically final. That N.C. Gen. Stat. § 7A-27(b)(3)(a) (emphasis added) explicitly

provides for appeal from “any interlocutory judgment or order” seems to indicate that

even judgments may be interlocutory. The legislature acknowledged by statute that

in drafting the FLAA, it considered certain provisions of the RUAA. See N.C. Gen.

Stat. § 50-62(a) (“Certain provisions of this Article have been adapted from the

Uniform Arbitration Act formerly in force in this State, the [RUAA] in force in this

State, the North Carolina International Commercial Arbitration and Conciliation

Act, and Chapters 50, 50A, 50B, 51, 52, and 52C of the General Statutes. This Article

shall be construed to effect its general purpose to make uniform provisions of these

Acts and Chapters[.]”). However, the majority appears to interpret the legislature’s

 2
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

decision to exclude the term “final” from the FLAA, in contradiction to the RUAA, as

evidence the legislature intended to include it.

 Assuming that the legislature purposefully excluded “final,” as the six

subsections governing appeals pursuant to the RUAA and FLAA are identical save

for this lone difference, subsection (c) provides that “[t]he appeal shall be taken in the

manner and to the same extent as from orders or judgments in a civil action.” N.C.

Gen. Stat. § 50-60(c) (emphasis added). N.C. Gen. Stat. § 7A-27(b)(3)(a), which

provides for the extent of appeals in civil actions, permits a plaintiff the right to

appeal an interlocutory order or judgment that affects a substantial right. Id.

(permitting appeal from “any interlocutory order or judgment of a . . . district court

in a civil action or proceeding that . . . [a]ffects a substantial right”) (emphasis added).

 Furthermore, this Court has considered whether an interlocutory order would

deprive an appellant of a substantial right, even where there was no statutory right

of appeal from arbitration. See Bullard, 196 N.C. App. at 637, 676 S.E.2d at 103

(engaging in a substantial right analysis of an interlocutory order specifically noted

by this Court as nonappealable pursuant to the governing arbitration statute); see

also Laws v. Horizon Hous., Inc., 137 N.C. App. 770, 771, 529 S.E.2d 695, 696 (2000)

(considering whether appeal from an order not listed in the governing arbitration

statute affects a substantial right); Bluffs, Inc. v. Wysocki, 68 N.C. App. 284, 284, 314

S.E.2d 291, 292 (1984) (same). Therefore, even when a specific order or judgment is

 3
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

not listed as one of the types of appeal permitted under the FLAA, an appeal of an

interlocutory order or judgment may still be permitted if an appellant can

demonstrate that absent immediate review, he would be deprived of a substantial

right.

 II. Substantial Right Implicated

 Orders denying or allowing discovery are generally interlocutory, and

therefore, typically not appealable unless they affect a substantial right which would

be lost if the ruling were not reviewed before final judgment. Dworsky, 49 N.C. App.

at 447-48, 271 S.E.2d at 523 (citation omitted). Whether an interlocutory ruling

affects a substantial right requires consideration of the facts of the case and the

procedural context of the order on appeal. Dep’t of Transp. v. Rowe, 351 N.C. 172,

175, 521 S.E.2d 707, 709 (1999) (citation omitted). A party has a substantial right

justifying immediate appeal of an order denying discovery if

 the desired discovery would not have delayed trial or have
 caused the opposing party any unreasonable annoyance,
 embarrassment, oppression or undue burden or expense,
 and if the information desired is highly material to a
 determination of the critical question to be resolved in the
 case[.]

Dworsky, 49 N.C. App. at 447-48, 271 S.E.2d at 523; see also Tennessee-Carolina

Transportation Inc. v. Strick Corp., 291 N.C. 618, 629, 231 S.E.2d 597, 603 (1977)

(holding that a pretrial order denying discovery of evidence “highly material to the

determination of the critical question to be resolved” in the pending action deprived

 4
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

appellant of a substantial right sufficient to justify immediate appeal); Starmount Co.

v. City of Greensboro, 41 N.C. App. 591, 593, 255 S.E.2d 267, 268 (1979) (dismissing

appeal of interlocutory order denying discovery in light of Tennessee-Carolina

Transportation, because “the information denied the defendant in the case . . . [was

not] crucial to its defense”).

 The majority does not attempt to distinguish this case from Tennessee-

Carolina Transportation or Dworsky or even address those cases at all. Instead, the

majority focuses its discussion on distinguishing two cases—Carolina-Virginia

Fashion Exhibitors, Inc. v. Gunter, 291 N.C. 208, 219, 230 S.E.2d 380, 388 (1976) and

William C. Vick Constr. Co. v. N.C. Farm Bureau Fed’n, 123 N.C. App. 97, 472 S.E.2d

346, disc. review denied, 344 N.C. 739, 478 S.E.2d 14 (1996)—that held the trial court

was permitted to grant a party to an arbitration post-award discovery based on

potential arbitrator misconduct, cases which plaintiff advanced to support his

position that “the [d]istrict [c]ourt clearly has authority to allow discovery in the

context of Plaintiff’s Motion to Vacate.” (emphasis added).

 In light of the applicability of Tennessee-Carolina Transportation and Dworsky

to plaintiff’s appeal, I find it appropriate to address these cases. The substantial right

claimed in the instant case originated from Tennessee-Carolina Transportation. As

this Court recently explained:

 In Tennessee-Carolina Transportation, the defendant sold
 150 trailers to the plaintiff, and the plaintiff subsequently

 5
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 sued the defendant for breach of an implied warranty of
 fitness based upon allegations that certain metal in the
 trailers did not “measure up to the proper degree of
 hardness.” Prior to trial, the defendant appealed from the
 trial court’s discovery order prohibiting the defendant from
 taking the deposition of an out-of-state expert witness who,
 at the plaintiff's request, had conducted tests on some of
 the trailers to determine the hardness of the relevant
 metal.

 The Supreme Court held that the appealed order affected
 a substantial right of the defendant because the order
 “effectively preclude[d] the defendant from introducing
 evidence of the ‘readings’ concerning the hardness of the
 metal obtained by the tests which [the expert] made”—
 evidence that was “highly material to the determination of
 the critical question to be resolved” at trial. The Court
 further noted that nothing in the record indicated that the
 taking of the expert’s deposition would have delayed the
 trial or would have caused the plaintiff or the expert any
 unreasonable annoyance, embarrassment, oppression, or
 undue burden or expense.

Britt v. Cusick, 231 N.C. App. 528, 531-32, 753 S.E.2d 351, 354 (2014) (internal

citations omitted) (emphasis added). In addition, the Tennessee-Carolina

Transportation Court reasoned:

 It would be highly impractical to proceed with the third
 trial of this complex action and then let the defendant, if
 unsuccessful again before the jury, appeal for the reason
 that it was denied the right to offer evidence of the
 “readings” obtained by [the expert’s] testing of a now
 undetermined number of the trailers. The sensible thing to
 do is to determine this question before the parties, their
 witnesses and the trial court are put to the expense and
 time consuming effort of a third trial on the merits.

 6
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

Tennessee-Carolina Transportation, 291 N.C. at 625, 231 S.E.2d at 601-02 (emphasis

added).

 In Dworsky, the plaintiffs sought to recover hospital and medical expenses that

the defendant-insurer refused to pay under an insurance policy. The plaintiffs

appealed from the trial court’s pretrial order denying a discovery request to inspect

and copy the entire contents of a file maintained by the defendant in connection with

the plaintiffs’ claim under the insurance policy. This Court held that the pretrial

order did not affect a substantial right when the plaintiffs had failed to identify, and

the record failed to disclose, “what relevant and material information . . . sought [was]

so crucial to the outcome of [the] case that it would deprive them of a substantial right

and thus justify an immediate appeal.” 49 N.C. App. at 448, 271 S.E.2d at 524.

 Tennessee-Carolina Transportation and Dworsky illustrate the difference

between a discovery order that affects a substantial right sufficient to justify

immediate appeal and one that does not. See, e.g., Britt, 231 N.C. App. at 532, 753

S.E.2d at 355 (distinguishing Tennessee-Carolina Transportation because the

discovery order appealed from merely regulated the manner of discovery, but did not

prohibit it, and therefore did not “effectively preclude[] the defendant[s] from

introducing evidence” that was “highly material to the determination of the critical

question to be resolved”); Harbour Point Homeowners’ Ass’n, Inc. v. DJF Enters., Inc.,

206 N.C. App. 152, 161, 697 S.E.2d 439, 446 (2010) (distinguishing Dworsky because

 7
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

discovery order granted discovery and because the plaintiff failed to show the two-

page memo in question was “highly material” to the “critical question to be resolved

in the case”); James v. Bledsoe, 198 N.C. App. 339, 345-46, 679 S.E.2d 494, 498 (2009)

(distinguishing Dworsky because the plaintiff failed to show the discovery sought was

“highly material to a determination of whether [the defendants] published false

statements with actual malice”). Unlike the cases seeking discovery of evidence that

is not highly material to a critical issue in the pending action, the discovery order in

the instant case precluded plaintiff from introducing evidence related to the

communications, negotiations, and agreements to sell DSA to United Drug, evidence

that is “highly material” to whether the arbitration award was “procured by

corruption, fraud, or other undue means.” N.C. Gen. Stat. § 50-54(a)(1). Plaintiff has

sufficiently demonstrated that this discovery order affects the substantial right

contemplated by Tennessee-Carolina Transportation and Dworsky.

 In the instant case, the trial court concluded “[t]here is no pending action

between Plaintiff and Defendant in which discovery may be propounded[.]” However,

plaintiff’s Motion to Vacate Arbitration Award and Set Aside Order based on

allegations that the arbitration award was procured by fraud is pending. The

“relevant and material information” plaintiff has identified would help the court to

determine whether defendant concealed and omitted material facts regarding the

eventual sale of DSA to United Drug. More specifically, the information would

 8
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

enlighten the court’s inquiry as to “whether Defendant had begun negotiations with

United Drug prior to settling Plaintiff’s equitable distribution claim, and whether she

withheld information supporting a higher valuation of her interest in DSA than what

the parties had stipulated.” The majority inaccurately describes plaintiff’s

investigation as a “fishing exhibition.” This is an unfair characterization because

plaintiff’s discovery request is narrowly focused with a stated objective. See Dworsky,

49 N.C. App. at 448, 271 S.E.2d at 524 (noting that while some relevant and material

evidence may be contained in the entire contents of the file the plaintiffs sought,

“plaintiffs are not entitled to a fishing expedition to locate it”).

 Moreover, “[a]ppellate procedure is designed to eliminate the unnecessary

delay and expense of repeated fragmentary appeals, and to present the whole case

for determination in a single appeal from the final judgment.” City of Raleigh v.

Edwards, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951) (citations omitted). The

purpose of the rules limiting immediate appeal of interlocutory orders is “to prevent

. . . appeals that unnecessarily delay the administration of justice and to ensure that

the trial divisions fully and finally dispose of the case before an appeal can be heard.”

Bailey v. Gooding, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980) (citations omitted).

 In the instant case, dismissing plaintiff’s appeal as interlocutory serves only to

delay the administration of justice with regard to the pending action, as well as to

burden both parties and the courts with unnecessary expense. The concern that the

 9
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

whole case is not presented for appeal is nonexistent when plaintiff is effectively

precluded from discovering and introducing the “clear evidence[,]” Pinnacle Grp., Inc.

v. Shrader, 105 N.C. App. 168, 171, 412 S.E.2d 117, 120 (1992), required to support

the grounds under which he seeks to vacate the arbitration award. See N.C. Gen.

Stat. § 50-54(a)(1) (providing for vacation of an arbitration award “procured by

corruption, fraud, or other undue means”).

 The practical reasoning of the Tennessee-Carolina Transportation Court is

particularly instructive: “It would be highly impractical” to proceed with plaintiff’s

motion to vacate without addressing the discovery order and let him, if unsuccessful,

appeal again for the reason that he was denied his right to discover evidence

regarding the timing of the sale. “The sensible thing to do is to determine this

question” now. Tennessee-Carolina Transportation, 291 N.C. at 629, 231 S.E.2d at

603-04. Plaintiff’s appeal should proceed.

 III. Discovery Order

 The majority correctly states that this Court reviews a trial court’s discovery

ruling under an abuse of discretion standard. Dworsky, 49 N.C. App. at 448, 271

S.E.2d at 523. “To demonstrate an abuse of discretion, the appellant must show that

the trial court’s ruling was manifestly unsupported by reason, or could not be the

product of a reasoned decision.” Nationwide Mut. Fire Ins. Co. v. Bourlon, 172 N.C.

App. 595, 601, 617 S.E.2d 40, 45 (2005) (internal citations omitted). The majority

 10
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

also correctly cites to Fashion Exhibitors and William C. Vick Construction Co. for

the proposition that when “an objective basis exists for a reasonable belief” of

arbitrator misconduct, parties may depose arbitrators as to that alleged misconduct

and such evidence is admissible in a proceeding to vacate an award. However, I

disagree with the majority’s discussion and application of these cases to the instant

case.

 The majority determined that the trial court properly denied discovery by

conflating “an objective basis . . . for a reasonable belief” with “specific, ‘objective’

evidence” of misconduct. It is a misinterpretation of significant magnitude to apply

so broadly a holding that appears to be carefully narrowed. See Fashion Exhibitors,

291 N.C. at 219, 230 S.E.2d at 388 (“[W]e hold that where an objective basis exists for

a reasonable belief that misconduct has occurred, the parties to the arbitration may

depose the arbitrators relative to that misconduct[.]”) (emphasis added). Discovery

yields specific, objective evidence. Since “an objective basis . . . for a reasonable belief”

precedes the “specific, ‘objective’ evidence” sought to be discovered, I do not believe

the requirement under Fashion Exhibitors to show an “objective basis . . . for a

reasonable belief [of misconduct]” equates with the majority’s requirement to

“identify specific, ‘objective’ evidence of misconduct.”

 Furthermore, I believe the holdings of these cases should extend beyond

arbitrator misconduct and apply to the conduct of a party. The logical extension of

 11
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

the principle promulgated by Fashion Exhibitors is that if post-award discovery may

be propounded to uncover evidence of arbitrator misconduct, it may also be

propounded to uncover evidence that an award was “procured by corruption, fraud,

or other undue means” of a party, as both are statutorily recognized as grounds to

vacate an arbitration award. Compare N.C. Gen. Stat. § 1-569.23(a)(1) (specifying

grounds to vacate under the RUAA), with N.C. Gen. Stat. § 50-54(a)(1) (specifying

identical grounds to vacate under the FLAA). The majority’s interpretation might

effectively bar post-award discovery—discovery based on an “objective basis for a

reasonable belief” of misconduct that is sought to identify the specific, objective

evidence of misconduct required to vacate an arbitration award—unless the moving

party can somehow first identify the specific, objective evidence of misconduct it seeks

to discover. Declining to apply Fashion Exhibitors to the instant case, “would deprive

the aggrieved party of its most effective means of ascertaining and proving the alleged

misconduct.” Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388 (emphasis

added).

 IV. Specific, Objective Evidence of Misconduct

 Even if Fashion Exhibitors and William C. Vick Construction Co. stand for the

principle that the majority concludes—that a party must first identify “specific,

‘objective’ evidence of misconduct prior to seeking post-award discovery as part of a

 12
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

motion to vacate an arbitration award”—I conclude that plaintiff has carried his

burden.

 Plaintiff presented the following evidence: The trial court entered the Consent

Order to Arbitrate Equitable Distribution and Child Support on 18 August 2011. The

parties disagreed for months about the value of defendant’s shares of stock in DSA.

Both parties retained business appraisers to arrive at an agreeable valuation of the

stock. Plaintiff’s expert, A.E. Strange, based his valuation of defendant’s shares with

the understanding, based on his requests for the production of documents and

interviews with defendant, that there were no written or oral offers to purchase DSA

and defendant had no intent to sell any or all of DSA. Strange explained (emphasis

added): “Information with respect to any written or oral offers to purchase DSA, or

any plans to sell all or part of DSA, would have been material to my final valuation

and conclusions, as information regarding a sale, potential sale, or plans to sell, is

critical to any business valuation.” In April 2012, plaintiff and defendant entered

into a pre-arbitration agreement, which was submitted to the arbitrator in advance

of the arbitration proceeding to settle equitable distribution. In this agreement,

defendant contended her value of shares of stock in DSA ranged from $3,340,000 to

$3,934,930, and plaintiff contended defendant’s value of stock ranged from

$3,750,000 to $4,275,000.

 13
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 At arbitration, the parties stipulated that the value of defendant’s ownership

interest in DSA was worth $3,485,000. The parties entered into an Equitable

Distribution Arbitration Award by Consent on 18 May 2012, which was judicially

confirmed that same day. Only 48 days later, on 5 July 2012, defendant allegedly

signed a letter of intent to sell DSA to United Drug for $28,000,000.2 Nevertheless,

the majority concluded that “[a]lthough Plaintiff finds this sequence of events

suspicious, he has not directed this Court to any specific, ‘objective’ evidence of

misconduct by Defendant that would necessitate post-award discovery.” I disagree.

 Plaintiff directed this Court to a series of e-mails beginning in November 2011

between Doug Townsend and Liam Logue discussing the potential sale of DSA to

United Drug, which provided in pertinent part:

 Liam,

 Cathy Stokes asked me to follow up with you regarding
 yours and United Drug’s interest in strengthening its US-
 based pharmacovigilence services.

 My schedule the next couple of weeks is flexible. Are there
 a few times that would be convenient for you to discuss
 United Drug and DSA??

 Thanks,

 Doug Townsend

 ....

 2Plaintiff indicates the exact ownership of defendant’s shares at the time of sale was unknown
but might have ranged between 67% to 86%.

 14
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

Liam,

Enjoyed our discussion as well. I will see Cathy tomorrow
to speak with her, but here’s what we would like to do as
next steps after executing a NDA [non-disclosure
agreement]:

1. Conference Call. . . . The major agenda item for me
would be to hear Mary Anne (and you as well) discuss
thoughts about how DSA would strategically and
operationally fit into the [United Drug] Alliance family.
There is no “wrong” answer here. I am simply looking to
see how Mary Anne thinks about acquisitions and
operational integration which would include all thoughts
about operating DSA as a standalone brand entity or
simply merging its operations into the Alliance brand. . . .

....

4. Delivery of Expression of Interest. Assuming the
meeting in Durham does not derail interest levels, then we
would ask that U-D/Alliance provide a written, non-
binding expression of interest to DSA. . . .

From there, we can determine if there is good reason to
consider moving forward with confirmatory diligence.

I will also reiterate that DSA is not necessarily for sale, but
it is interested in examining unique strategic
opportunities. I plan to recommend to Cathy that U-
D/Alliance, based on a productive first discussion, appears
to meet this test.

Let me know any additional thoughts you may have as I
will be meeting with Cathy tomorrow afternoon.

Regards,

Doug

 15
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 Plaintiff also directed this Court to Strange’s affidavit, where Strange states

that when he was retained by plaintiff in May 2011 to perform a valuation of

defendant’s ownership interest in DSA, Strange sent defendant a list of “Documents

Requested for a Business Valuation,” including “requests for copies of any buy-sell

agreements and/or written offers to purchase or sell company stock,” which defendant

never produced nor later supplemented. Strange testified that when he interviewed

defendant on 7 December 2011, he specifically asked defendant whether she had

received any written or oral offers to purchase DSA over the past five years, and she

responded that she had not. Strange stated that he asked defendant to describe any

plans to sell all or part of DSA, and defendant replied that she had no such plans.

 Plaintiff further directed this Court to defendant’s testimony from depositions

taken on 17 and 20 January 2012, which provided in pertinent part:

 Q. Have you discussed selling your business with anyone
 at any time?

 A. Yes.

 Q. Tell us about who that was with and the context of the
 conversation or offer or whatever it might be.

 ....

 A. There was no offer. We’ve had conversations
 throughout the course of DSA’s existence as far as capital,
 structure, if it’s buy-sell, if it’s a merger opportunity, if it’s
 a partnership opportunity. Whatever I can do best for the
 sake of the company is what I explore.

 16
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 Q. Tell me about all of those.

 A. The specifics of all of those?

 Q. Yes, ma’am.

 A. We have folks that send me emails every other day that
 I have no idea who they are or what they’re all about, about
 opportunities to invest or to acquire or to partner, strategic
 alliances. I get those constantly and have been since we
 started.

 Q. Do you have those records?

 A. Most likely they’d be in my email.

 Q. Let’s go back to the issue of selling. Has anyone ever
 made an offer to buy your business?

 A. No.

 ....

 Q. Doug Townsend. Have you discussed with him the
 subject of selling your business?

 A. Yes. I’ve discussed lots of topics with Doug.

 Q. And have you discussed any particular numbers that
 might be appropriate by which or for which you would sell
 your shares?

 A. No.

 Q. You’ve never discussed that?

 A. No.
 It is undisputed that plaintiff’s Motion to Vacate Arbitration Award and Set

Aside Order is currently pending in district court. Indeed, the majority’s decision to

 17
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

dismiss this appeal as interlocutory necessarily passes on this question and answers

it in the affirmative. However, the majority states that plaintiff’s motion to vacate is

merely a “motion” and not an “action.” Although it is clearly a motion, its filing

constituted an action. See, e.g., Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,

529 U.S. 193, 203 (2000) (labeling “motions to confirm, vacate, or modify [arbitration

awards]” as “actions”); see also Black’s Law Dictionary 83 (8th ed. 2004) (“An action

has been defined to be an ordinary proceeding in a court of justice, by which one party

prosecutes another party for the enforcement or protection of a right, the redress or

prevention of a wrong[.]” . . . “More accurately, it is . . . any judicial proceeding, which,

if conducted to a determination, will result in a judgment or decree . . . .”).

 The filing of this motion initiated an action, which is subject to the North

Carolina Rules of Civil Procedure. Rule 26 provides that “[p]arties may obtain

discovery regarding any matter . . . relevant to the subject matter involved in the

pending action[.]” N.C. Gen. Stat. § 1A-1, Rule 26(b)(1). Discovery is necessary for

plaintiff to carry his evidentiary burden to demonstrate grounds to vacate the

arbitration award. “[T]he party seeking to vacate [an arbitration award] must

shoulder the burden of proving the grounds for attacking its validity[,]” Pinnacle Grp.,

105 N.C. App. at 171, 412 S.E.2d at 120 (citation omitted), and “[o]nly clear evidence

will justify vacating an award.” Id.

 18
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 The information that plaintiff seeks pertains to the timing and circumstances

of defendant’s sale of her interest in DSA to United Drug. The interrogatories that

plaintiff requested provided, in pertinent part:

 3. Identify the date on which Defendant or anyone
 affiliated with DSA (including any third parties acting on
 behalf of DSA) first had any contact with United about a
 potential merger with, or purchase or acquisition of DSA
 by United or any of its affiliates. Identify all individuals
 who were involved in such contact and describe the method
 of such contact (whether email, phone, letter, or otherwise).

 ....

 4. Identify the date on which United first presented DSA
 or Defendant with any Non-Disclosure Agreement (“NDA”)
 or equivalent document regarding a potential merger with,
 or purchase or acquisition of DSA by United or any of its
 affiliates, and identify the date such NDA or equivalent
 document was signed by either party.

 ....

 5. Identify the date on which United first presented DSA
 or Defendant with any Term Sheet or equivalent
 document, in draft form or otherwise, regarding a potential
 merger with, or purchase or acquisition of DSA by United
 or any of its affiliates.

 ....

 6. Identify the date or dates on which United or any of its
 affiliates presented DSA or Defendant with any offer or
 proposal to purchase, acquire, or merge with DSA.
 Conversely, identify the date or dates on which DSA or
 Defendant presented United or any of its affiliates with
 any offer to be sold to, acquired by, or merged with United
 or any of its affiliates.

 19
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

....

16. Identify the date on which you first discussed a
potential merger with, or purchase or acquisition of DSA
by United with any person or persons affiliated with DSA,
including employees, and identify any such person or
persons with whom you discussed the potential merger,
purchase, or acquisition.

....

17. Identify the date on which DSA or Defendant first
discussed a potential merger with, or purchase or
acquisition of DSA by United with attorney Robert Ponton.
...

....

18. Identify the date on which DSA or Defendant first
discussed a potential merger with, or purchase or
acquisition of DSA by United with attorney Theron “Tad”
vanDusen. . . .

....

19. Identify the date on which DSA or Defendant first
discussed a potential merger with, or purchase or
acquisition of DSA by United with Robert McKenzie.

....

20. Identify the date on which DSA or United first
commenced any due diligence activity, including
requesting or providing documents and information, with
respect to a merger with, or purchase or acquisition of DSA
by United.

....

 20
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 22. Identify the date of the first in-person meeting between
 DSA and Untied during which the parties discussed a
 potential merger with, or purchase or acquisition of DSA
 by United. . . .

 Plaintiff also requested the production of documents pertaining to information

relating to the sale of DSA to United and filed requests for admission with defendant.

Subsequently, plaintiff filed motions to compel responses to plaintiff’s first set of

interrogatories, responses to plaintiff’s request for production of documents, and

responses to plaintiff’s requests for admission with defendant. In his Motion to

Vacate Arbitration Award and Set Aside Order and Motion to Engage in Discovery,

plaintiff requested from the trial court an order allowing the parties to engage in this

“limited discovery.”

 It is well settled that

 parties to an arbitration will not generally be heard to
 impeach the regularity or fairness of the award.
 Exceptions are limited to such situations as those involving
 fraud, misconduct, bias, exceeding of powers and clear
 illegality.

Carolina-Virginia Fashion Exhibitors v. Gunter, 41 N.C. App. 407, 410-11, 255 S.E.2d

414, 417 (1979) (internal citations omitted). “Judicial review of an arbitration award

is confined to determination of whether there exists one of the specific grounds for

vacation of an award under the arbitration statute.” Semon v. Semon, 161 N.C. App.

137, 141, 587 S.E.2d 460, 463 (2003) (brackets omitted) (quoting Fashion Exhibitors,

41 N.C. App. at 410-11, 255 S.E.2d at 418).

 21
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

 As plaintiff explained in his Motion to Vacate Arbitration Award and Set Aside

Order and Motion to Engage in Discovery:

 A multi-million dollar corporate acquisition, particularly
 one involving a foreign company like Untied [sic] Drug, is
 a complex, multilayered process that can take months or
 even years to complete. It is highly unlikely, if not
 impossible, for DSA to have initiated negotiations with
 United Drug, arrived at mutually agreeable terms,
 performed sufficient due diligence, and executed a Letter
 of Intent in the span of about six (6) weeks. More likely,
 Defendant intentionally concealed the discussions and
 negotiations between DSA and United Drug during
 discovery and arbitration in an attempt to keep the
 apparent value of her ownership interest artificially low
 and convince Plaintiff to agree to an unfair settlement,
 thereby reaping a financial windfall by selling her
 ownership interest to United Drug months later. What is
 clear is that at the time of settlement, Plaintiff had been
 improperly led to believe, based on Defendant’s failure to
 properly disclose material information, that Defendant had
 no intention or plans to sell her ownership interest in DSA,
 and Plaintiff decided to settle arbitration in reliance on
 that belief.

 Until this Court decides whether plaintiff is permitted to engage in the limited

discovery he requests, plaintiff will not be able to establish the grounds that the

“award was procured by corruption, fraud or other undue means” to support vacating

the award. N.C. Gen. Stat. § 50-54(a)(1).

 V. Conclusion

 Whether the evidence that plaintiff seeks would be favorable or unfavorable to

his position is speculative. However, plaintiff has demonstrated the substantial right

 22
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

contemplated by Carolina-Tennessee Transportation and Dworsky sufficient to justify

immediate review. Plaintiff has identified, and the record discloses, “relevant and

material information” that is “highly material” to the “critical question to be resolved”

in his pending action: whether defendant concealed or otherwise failed to disclose

the potential sale of DSA to United Drug during the parties’ equitable distribution

proceedings, thereby significantly diminishing the valuation of defendant’s business.

Furthermore, because the trial court denied plaintiff’s Motion to Engage in Discovery

and concluded that “[t]here is no pending action between Plaintiff and Defendant in

which discovery may be propounded[,]” plaintiff has been “effectively precluded” from

introducing additional evidence in his pending motion to vacate and set aside.

However, plaintiff has presented an “objective basis . . . for a reasonable belief” of

misconduct sufficient to justify the limited post-award discovery he now seeks.

Because the discovery sought is limited to information related to the communications,

negotiations, and agreements to sell DSA to United Drug, plaintiff’s focused

investigation is not a “fishing exhibition.” Unless this Court reverses the trial court

to allow discovery, plaintiff will be unable to introduce the “clear evidence[,]” required

to prove the grounds that the “award was procured by corruption, fraud or other

undue means” sufficient to vacate. N.C. Gen. Stat. § 50-54(a)(1).

 For these reasons, I conclude plaintiff has a right to appeal the trial court’s

discovery order. In the alterative, I believe this Court should grant plaintiff’s petition

 23
 STOKES V. CRUMPTON

 CALABRIA, J., dissenting

for writ of certiorari to address his appeal on the merits. The trial court abused its

discretion by denying plaintiff’s limited discovery request, and there is no just reason

to delay plaintiff’s appeal. The trial court’s order should be reversed, and the case

should be remanded.

 24